## STATE OF CONNECTICUT *v.* MARVIN KITCHENS
### (SC 18421)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 23, 2010—officially released January 5, 2011**

**January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Meghan L. Greco, special public defender, with whom was Elizabeth M. Inkster, senior assistant public defender, for the appellant (defendant).

Laurie N. Feldman, special deputy assistant state's attorney, with whom, on the brief, were Gail P. Hardy, state's attorney, and Herbert Carlson, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Marvin Kitchens, appeals[1] from the judgment of conviction, rendered after a jury trial, of kidnapping in the second degree in violation of General Statutes § 53a-94 (a)[2] and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[3] On appeal, the defendant claims that the trial court improperly (1) failed to instruct the jury,

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we granted the state's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person."

General Statutes § 53a-91 (2) provides: " 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

[3] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

General Statutes § 53a-91 (1) provides in relevant part: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

in accordance with *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), that any confinement or movement of the victim had to exceed that which was incidental or necessary to the commission of the underlying offenses, and (2) included in its jury instructions the conduct element of the statutory definition of intent under General Statutes § 53a-3 (11),[4] even though kidnapping and unlawful restraint are specific intent crimes.[5] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On the night of April 19, 2007, the victim, Jennaha Ward, was playing cards with her godfather, Ronald Sears, at Sears' second story apartment in the city of Hartford. While playing cards, the victim and Sears decided to eat, and Sears went out and purchased shrimp for them to fry. The victim then prepared the shrimp while Sears heated cooking oil in a cast iron skillet. While they were eating the shrimp, the defendant called Sears' cell phone looking for the victim, with whom the defendant had been in a five month extramarital relationship that the victim recently had ended. The defendant told the victim that he was around the corner

---

[4] General Statutes § 53a-3 provides in relevant part: "(11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[5] The defendant also claims that the jury's finding of guilt with respect to the kidnapping and unlawful restraint charges is legally inconsistent with its finding of not guilty with respect to burglary in the second degree because, "[b]y [finding him not guilty] of burglary, the jury necessarily concluded that [the defendant] did not intend to commit unlawful restraint or any other crime within [the] apartment [where the incident in question took place]." At oral argument before this court, however, the defendant conceded that this claim is precluded by our recent decision in *State* v. *Arroyo*, 292 Conn. 558, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), which was released subsequent to the filing of his principal brief in this appeal, and in which we concluded that "claims of legal inconsistency between a conviction and an acquittal are not reviewable." Id., 586.

from Sears' apartment and asked whether she would come down and talk to him, and the victim said that she would. The victim, however, did not intend to speak to the defendant. Rather, she went downstairs to lock the door to make sure that he could not get inside. When the victim reached the first floor landing, she jumped up to look out the window above the door to see whether the defendant had arrived yet. As soon as she landed back on her feet, he burst through the door, grabbed her by her clothing and pulled her outside. After the defendant heard a woman say that she was calling the police, he again grabbed the victim by her clothing and dragged her back inside and upstairs to Sears' apartment.

Once upstairs in the apartment, the defendant asked the victim why she had ended their relationship and physically[6] blocked her from leaving the apartment when she tried to run out the door. Following the altercation that ensued between the defendant and the victim, during which Sears asked them to take their dispute outside, she sustained first and second degree burns to her face after her head made contact with the skillet containing the frying oil.[7] The defendant then fled the apartment, at which time Sears called for the police

---

[6] The victim testified that the defendant was approximately six feet, four inches tall, weighed approximately 200 pounds and was physically strong.

[7] The testimony of Sears and the victim at trial, which the jury apparently did not credit, was that, upon arriving back in the apartment, the defendant had told the victim to sit down at the kitchen table, at which time he splashed her in the face with gin from a bottle or glass that had been on the table, causing her eyes to burn. After the victim washed her eyes out in the bathroom down the hall, she returned to the kitchen where she saw the defendant with a black and yellow utility knife in his hand. After he opened the knife, the victim hit the defendant in the face with a marble ashtray. The defendant then grabbed her by her head scarf, and then her hair, and dragged her approximately eleven feet toward the stove, where he forced her face into the skillet of hot oil. Sears testified, however, that he did not actually see the defendant push the victim's face into the oil; he only heard her scream.

and emergency assistance. The victim received treatment for her facial burns at Saint Francis Hospital and Medical Center, and the Burn Center at Bridgeport Hospital.

After a police investigation,[8] the defendant was arrested, and the state charged him in a five count information with assault in the first degree in violation of General Statutes § 53a-59 (a) (1), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (2) and 53a-49 (a) (2), burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (1), kidnapping in the second degree in violation of § 53a-94 (a), and unlawful restraint in the first degree in violation of § 53a-95 (a). Following a jury trial and the trial court's denial of defense counsel's oral motion for judgment of acquittal, the jury returned a verdict of not guilty on the assault, attempted assault and burglary charges, but guilty on the kidnapping and unlawful restraint charges. The trial court then rendered judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of twelve years imprisonment, execution suspended after eight years, and five years probation. This appeal followed.

I

The defendant first claims that the trial court failed to instruct the jury, in accordance with the line of cases starting with *State* v. *Salamon*, supra, 287 Conn. 509, that it could not find the defendant guilty of kidnapping if the restraint or movement of the victim was limited

[8] Because of the presence of her husband at the hospital, as well as the fact that she was concerned about the defendant being arrested, the victim initially told Officer Joseph Mauro, who was investigating the case, that she had been injured in an altercation over the proceeds from the card game. She did not inform the police of her allegations against the defendant until approximately one week later, when she signed a sworn statement following an interview.

to that necessary or incidental to the commission of an underlying offense. Relying on footnote 35 of the majority opinion in *Salamon*, the defendant argues that he was entitled to this instruction because a reasonable jury could have found that the restraint in this case was incidental to the underlying offense of assault, notwithstanding the fact that the jury had found him not guilty on that charge. In response, the state, relying on our recent decision in *State* v. *Winot*, 294 Conn. 753, 762 n.7, 988 A.2d 188 (2010), contends that a new trial is not required under *Salamon* because the defendant had completed the crime of kidnapping before engaging in the conduct that gave rise to the assault and attempted assault charges of which he was acquitted, and that the force underlying the assault charges was different from that utilized to accomplish the kidnapping. The state also contends that the acquittal on the assault charges rendered any failure to give the *Salamon* instruction harmless error not requiring reversal because an acquittal on those charges is a binding determination that there were no underlying crimes and, further, would create confusion on retrial. We agree with the state and conclude that the acquittal on the underlying assault charges rendered the lack of a *Salamon* instruction harmless error.

The record reveals the following additional facts and procedural history. The case was tried in late February and early March of 2008, four months prior to the July 1, 2008 release of our decision in *State* v. *Salamon*, supra, 287 Conn. 509. The trial court's instruction on kidnapping in the second degree did not direct the jury to consider whether the restraint imposed exceeded that necessary or incidental to the underlying assault crimes.[9] Further, the defense did not file a request to

---

[9] We note that the trial court instructed the jury in relevant part: "The defendant is charged in count four with the crime of kidnapping in the second degree, in violation of [§] 53a-94 of the Penal Code, which provides, as it pertains to this case, as follows: A person is guilty of kidnapping in the second degree when he abducts another person.

charge the jury, or take an exception to the instructions as given, to that effect.

Notwithstanding the defendant's failure to preserve this issue at trial, our interpretation of the kidnapping statutes in *Salamon* "may be applied to the present case because of the general rule that judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . . *Marone* v. *Waterbury*, 244 Conn. 1, 10–11, 707 A.2d 725 (1998)." (Internal quotation marks omitted.) *State* v. *Thompson*, 118 Conn. App. 140, 154, 983 A.2d 20 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010); see also *State* v. *Hampton*, 293 Conn. 435, 462 n.16, 978 A.2d 1089 (2009) (following *Marone* and concluding that *Salamon* is applicable to pending appeal in case tried nearly two years prior to its release).

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire

"The elements of the crime: For you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the defendant abducted the victim. 'Abduct' means, as it pertains to this case, to restrain a person with intent to prevent his liberation by using or threatening the use of physical force or intimidation. The term 'restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. As used here, 'without consent' means but is not limited to any means whatsoever. You will recall my earlier instructions on intent and apply them here also.

"Now, the state contends in count four that, on or about April 19, 2007, in the late evening, at 15 Martin Street, Hartford, Connecticut, the defendant . . . abducted [the victim]. The defendant, on the other hand, denies all of the state's allegations. If you unanimously find in count four that the state has failed to satisfy you beyond a reasonable doubt as to any of the necessary elements, which I have explained to you, you must find the defendant not guilty. On the other hand, if the state has satisfied you beyond a reasonable doubt of the existence of each of these essential elements, your verdict should be guilty of the offenses as charged on this count."

charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Hampton*, supra, 293 Conn. 458.

In *State* v. *Salamon*, supra, 287 Conn. 509, we "reconsidered and reversed our long-standing jurisprudence holding that the crime of kidnapping encompasses restraints that are necessary or incidental to the commission of a separate underlying crime; see, e.g., *State* v. *Luurtsema*, 262 Conn. 179, 201–203, 811 A.2d 223 (2002); concluding that '[o]ur legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim.' " *State* v. *DeJesus*, 288 Conn. 418, 429, 953 A.2d 45 (2008). We emphasized, however, that

"[o]ur holding [did] not represent a complete refutation of the principles established by our prior kidnapping jurisprudence. First, in order to establish a kidnapping, the state is not required to establish any minimum period of confinement or degree of movement.[10] When that confinement or movement is merely incidental to the commission of another crime, however, the confinement or movement must have exceeded that which was necessary to commit the other crime." *State* v. *Salamon,* supra, 546.

We also emphasized that "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury." Id., 547–48. Indeed, we directed trial courts to instruct juries making that determination "to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced

[10] "We reiterate[d], however, that kidnapping convictions involving miniscule restraints remain subject to challenge under the vagueness doctrine." *State* v. *Salamon,* supra, 287 Conn. 546 n.31.

the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 548.

Moreover, we emphasized in *Salamon*, in which the defendant "ultimately was not tried for assault," that "a defendant is entitled to an instruction that he cannot be convicted of kidnapping if the restraint imposed on the victim was merely incidental to the assault, regardless of whether the state elects to try the defendant for assault, because the facts reasonably would support an assault conviction." Id., 550 n.35. Citing numerous sister state cases, we noted in footnote 35 of that opinion that "[t]o conclude otherwise would give the state carte blanche to deprive the defendant of the benefit of such an instruction merely by declining to charge him with the underlying crime, which . . . generally will carry a far less serious maximum possible penalty than the kidnapping charge." Id., 551 n.35.

Relying on this footnote from *Salamon*, the defendant claims that he is entitled to a new trial,[11] even though he

---

[11] In *State* v. *DeJesus*, supra, 288 Conn. 437, we overruled our previous decision in *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008) (*Sanseverino I*), to the extent that it had directed an appellate remedy of a judgment of acquittal on the kidnapping charges because, "under the facts of [*Sanseverino*], no reasonable jury could have found the defendant guilty of kidnapping in the first degree on the basis of the evidence that the state proffered at trial." *State* v. *Sanseverino*, supra, 624; see also *State* v. *Sanseverino*, 291 Conn. 574, 589, 969 A.2d 710 (2009) (*Sanseverino II*) (following *DeJesus* upon reconsideration of *Sanseverino I*, giving state "the opportunity to decide whether to retry the defendant on the charge of kidnapping in the first degree," and concluding that "it is not the function of this court to make that decision for the state"). In *DeJesus*, we emphasized that "the appropriate remedy for the instructional impropriety identified in *Salamon* is to reverse the defendant's kidnapping conviction and to remand the case to the trial court for a new trial. It is well established that instructional impropriety constitutes 'trial error' for which the appropriate remedy is a new trial, rather than a judgment of acquittal." *State* v. *DeJesus*, supra, 434; see also id., 439 ("[A]ny insufficiency in proof was caused by the subsequent change in the law under *Salamon*, rather than the government's failure to muster sufficient evidence. Accordingly, the proper remedy is a

was acquitted of the underlying assault and attempted assault charges arising from the victim's facial injuries. We disagree. First, the failure to give a *Salamon* instruction is not reversible error per se; it may be harmless on the facts of a particular case, as is demonstrated by our recent decision in *State* v. *Hampton*, supra, 293 Conn. 435, in which we concluded that the defendant's failure to receive a *Salamon* instruction was harmless beyond a reasonable doubt because, although the defendant had been charged with both kidnapping and sexual assault, "the record [did] not contain evidence that could rationally lead to a contrary finding by the jury as to whether the defendant's restraint of the victim had been inherent in, or merely incidental to, the [additional] alleged crimes. The state presented overwhelming evidence that the defendant and [his accomplice] had kidnapped the victim and had driven around Hartford and East Hartford with her for well over three hours before the defendant's alleged commission of any other crimes commenced." Id., 463; see also id., 464 ("The passage of this substantial period of time, which was uncontested by the defendant at trial, clearly show[ed] the defendant's intent to prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the subsequent crimes. His restraint of the victim was not incidental to any additional offenses.").

We also find persuasive footnote 7 in *State* v. *Winot*, supra, 294 Conn. 762–64, in which the majority responded to the dissenting justices' conclusion that the absence of a *Salamon* instruction required the defendant in that case to receive a new trial because the evidence that supported his conviction for kidnapping in the second degree "disclose[d] conduct that could constitute another crime, i.e., assault in the third

---

new trial [at which] the jury properly is instructed on the element of intent in accordance with the dictates of *Salamon*.").

degree, breach of the peace, creating a public disturbance or disorderly conduct, to which a jury reasonably could find the restraint was wholly incidental." Id., 784 (*Katz, J.*, dissenting). Concluding that the rule of *Salamon* was inapplicable to *Winot*, the majority emphasized that "there was no evidence presented at trial suggesting that the defendant, when he grabbed the victim's arm, was in the process of committing another crime against her to which the restraint potentially was incidental"; id., 763 n.7; and disagreed with the dissenting justices' assertion that the evidence "disclose[d] conduct that could constitute another crime . . . [because] there was no evidence that the defendant injured or struck the victim. Accordingly, a jury could not find that the defendant's restraint of the victim was incidental to the commission of assault in the third degree or breach of the peace in the second degree." (Internal quotation marks omitted.) Id. We also noted that "the evidence was overwhelming that the defendant, when he accosted the victim, intended to prevent her liberation"; id., 763–64 n.7; which meant that, "even if the defendant's restraint of the victim also could be found to constitute the violent, tumultuous or threatening behavior proscribed by our statutes criminalizing [the] creation of a public disturbance . . . and disorderly conduct . . . no jury reasonably could conclude that the kidnapping was incidental to his commission of those crimes, rather than the converse." (Citations omitted; internal quotation marks omitted.) Id., 764 n.7. Finally, we "disagree[d] with the defendant that he [was] entitled to an incidental instruction in connection with the charge of risk of injury to a child . . . ." Id. Most tellingly with respect to the present case, we emphasized in *Winot* that the Appellate Court's reversal in that case of the defendant's risk of injury conviction for insufficiency of the evidence meant that he would not be retried on that charge, and, therefore, "a remand

of [the] matter for an instruction on the incidental rule in relation to risk of injury would [have been] illogical and wholly confusing to the jury. See *Walker* v. *Commonwealth*, 47 Va. App. 114, 122–24, 622 S.E.2d 282 (2005) (incidental rule inapplicable [when] defendant acquitted of robbery), aff'd, 272 Va. 511, 636 S.E.2d 476 (2006); see also *People* v. *Robbins*, 131 Mich. App. 429, 433, 346 N.W.2d 333 (1984) (incidental rule inapplicable [when] trial court granted defendant's motion for directed verdict on underlying assault charge); *State* v. *French*, 139 Vt. 320, 321, 428 A.2d 1087 (1981) (incidental rule inapplicable [when] defendants acquitted of sexual assault) . . . ." (Citation omitted.) *State* v. *Winot*, supra, 764 n.7.

Having reviewed the record in this case, we conclude that, in light of the multitude of charged offenses, including assault and attempt to commit assault, arising from the same continuum of events, the defendant should have received a *Salamon* instruction. See *State* v. *Salamon*, supra, 287 Conn. 550 n.35. We agree, however, with the state that the lack of such an instruction was harmless under the circumstances because the defendant was acquitted of all charges other than kidnapping and unlawful restraint, thus indicating that the jury believed only the victim's allegations with respect to the defendant's moving her forcibly from the apartment building's vestibule to another area outside and then back inside and up to Sears' apartment, where the defendant then confined her temporarily. Put differently, the jury's verdict, which indicated the jury's disbelief of the victim's allegations of assault; see footnote 7 of this opinion; is a conclusive finding that there was no separate crime underlying the kidnapping charge. See *State* v. *Hampton*, supra, 293 Conn. 463 (concluding that defendant's failure to receive *Salamon* instruction was harmless beyond reasonable doubt, even though he had been charged with both kidnapping and sexual

assault, because "the defendant and [his accomplice] had kidnapped the victim and had driven around . . . with her for well over three hours before the defendant's alleged commission of any other crimes commenced"); see also *People* v. *Robbins*, supra, 131 Mich. App. 433 (trial court properly declined to instruct on incidental rule because, after granting of directed verdict on underlying assault charge, "no one suggested that any underlying lesser or co-equal offense could be found to have been committed, and there was no evidence of any such offense"); *People* v. *Gonzalez*, 80 N.Y.2d 146, 148, 153, 603 N.E.2d 938, 589 N.Y.S.2d 833 (1993) (concluding that second degree kidnapping conviction arising from "a lengthy odyssey on the streets of Brooklyn," prior to alleged sexual assault, should not have been merged with acquittal for attempted sexual assault because "[t]he abduction constituted the discrete crime of second degree kidnapping which was already completed, in all its elements, before the victim was allegedly sexually assaulted," and because "[t]he restraint was not a minimal intrusion necessary and integral to another crime . . . [or] simultaneous and inseparable from another crime," but, rather, "was a crime in itself"); *People* v. *Cruz*, 296 App. Div. 2d 22, 26–27, 745 N.Y.S.2d 528 (merger doctrine inapplicable when "there is sufficient evidence of restraint but insufficient evidence of the other charged crime"), appeal denied, 99 N.Y.2d 534, 782 N.E.2d 572, 752 N.Y.S.2d 594 (2002); *State* v. *French*, supra, 139 Vt. 321 (incidental rule inapplicable when defendant acquitted of sexual assault because "the kidnapping, if proven in every element, can stand on its own"); *Walker* v. *Commonwealth*, supra, 47 Va. App. 122, 124 (rejecting defendant's claim that he was entitled to reversal of abduction conviction on ground that "detention should be ignored because it was incidental to the claimed robbery" when defendant was acquitted of robbery charge, thereby rendering incidental rule inapplicable).

Moreover, we agree with the state that remanding the case for a new trial on this ground would create the risk of confusion, as well as illogical jury instructions at the new trial, particularly given the distinction between uncharged crimes and crimes of which a defendant has been acquitted. Cf. *State* v. *Smith*, 289 Conn. 598, 611–12, 960 A.2d 993 (2008) (noting distinction between nolle prosequi, which restores defendant to preinformation status and permits "the state [to] continue prosecution of a defendant only after filing a new information and making a new arrest of the defendant within the statute of limitations," and dismissal of charges with prejudice). Indeed, the defendant cannot be retried for assault or attempted assault because of his acquittal on those counts at the first trial; see, e.g., *State* v. *Tate*, 256 Conn. 262, 284, 773 A.2d 308 (2001); and the introduction of evidence of the victim's assault claims, which the jury already had rejected on the basis of its verdict in this case, could be unduly prejudicial and precluded at that new trial. Accordingly, we conclude that the lack of a *Salamon* instruction was harmless and does not require a new trial.

II

The defendant next claims that the trial court improperly instructed the jury on the element of intent necessary to find the defendant guilty of kidnapping and unlawful restraint. See General Statutes § 53a-3 (11).[12] The defendant specifically claims that the trial court's instruction that "a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct" was improper because kidnapping and unlawful restraint are specific intent crimes to which the conduct portion of the statute does not apply. The defendant concedes that no exception was taken to the

---

[12] See footnote 4 of this opinion.

challenged instruction at trial and requests our review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state responds that the defendant waived or "forfeited" his jury instruction claim when the defense ignored multiple opportunities afforded by the trial court to examine the instructions and flag any errors while there was still time to correct them. The state alternatively argues that the defendant cannot satisfy the third prong of *Golding* because the jury could not reasonably have been misled so as to find him guilty without finding specific intent. We agree with the state that the defendant cannot prevail under *Golding*.

The record reveals the following relevant facts and procedural history. On February 25, 2008, the state filed a request to charge containing five suggested changes to the instructions on assault and burglary. The following day, when the trial court noted on the record that defense counsel had stated in chambers that he did not intend to file a request to charge and asked if that was still the case, counsel replied that it was. Two days later, the court held an on-the-record charge conference in which it referred to a proposed charge it previously had given to the parties.[13] After a brief discussion with the assistant state's attorney (prosecutor) concerning the assault instruction, the court asked defense counsel if there was anything he wanted to discuss. Counsel

---

[13] At the outset, the court addressed the assistant state's attorney (prosecutor) and defense counsel, and the following colloquy ensued:

"The Court: . . . As you know, you probably both still have or you know what the first part of my charge is just general things, so is there any objection to that or request to change that?

"[The Prosecutor]: I didn't review mine from about sixteen months ago, but my recollection is I had no objection at that time, so I can't imagine it's changed.

"The Court: Okay.

"[The Prosecutor]: I'll just leave it at that.

"The Court: I'll just give you generally what I discuss."

Accordingly, it appears that the trial court previously had given the prosecutor and defense counsel written copies of the proposed instructions.

indicated that he would like to discuss the prosecutor's request to charge, which the court proceeded to consider. Defense counsel agreed that the proposed language fairly stated the law and indicated that he either had no objection or preferred the standard charge. At one point, defense counsel asked that the court use less "pejorative" language in its instruction on the defendant's decision not to testify, and the court agreed to do so. At the conclusion of the conference, the court asked the attorneys, "[a]nything else about the charge . . . ?" Defense counsel replied, "[n]o, Your Honor. I don't think so." After addressing certain other matters, the court advised that both attorneys should refrain from defining legal terms in their summations and should limit their arguments to the facts that would satisfy the elements of the charged crimes.[14] Both parties agreed, with defense counsel responding, "[f]air enough."

Several days later, the court informed the parties in an on-the-record conference that it had completed the jury instructions and that each attorney should obtain a copy for discussion at a future meeting. The prosecutor responded that he had stopped by the courthouse the previous day,[15] had read the completed instructions and

---

[14] The court stated as follows: "When I say you can't discuss the law, what I mean is you can't define terms. That doesn't mean, however, that you can't refer to facts that constitute the law like the elements of the offense. What is a dangerous instrument? You know, the facts, what are you claiming the dangerous instrument? What are you claiming, you know, intent? Things like that. I don't want to suggest you can't use the legal terms that I'm going to use, but you can't explain it. You can explain the facts that constitute the legal terms, and then I'll explain what the terms are, like 'dwelling,' or if you want to say, 'he had permission to be there or you know, he didn't have permission' . . . . [Y]ou can refer to the principles and with the facts, but not just—don't say, 'okay, a building is a dwelling,' you know, things that I'm going to say."

[15] The court apparently had left written copies of the jury instructions with the clerk's office in the judicial district of Hartford, from which the prosecutor had obtained his copy.

was ready to make some suggestions, none of which related to the kidnapping or unlawful restraint counts, but that he did not know if defense counsel had done the same. The court replied that, if the prosecutor had any suggestions, it wanted to hear them at that time. Reading from his copy of the instructions, the prosecutor remarked on a typographical error and suggested one other minor correction to the instruction on credibility. At the conclusion of the discussion, the court turned to defense counsel and asked if he also had been able to examine the instructions, to which counsel replied, "[a]ctually, Your Honor, my copy is downstairs, but I didn't have any major revisions." The court then concluded: "All right. So then we don't have to get together. We're done. Okay." Neither party said anything further on the matter, and the court adjourned.

Thereafter, the parties made their closing arguments, and the court instructed the jury. The court first instructed on the element of intent under count one—first degree assault—that, "[a]s defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct." For each substantive offense thereafter, the court repeated the preceding instruction on intent or stated as follows: "You will recall the instructions on intent that I gave you, when I explained count one and apply them here also." Upon completion of the instructions, the prosecutor stated that he had no exceptions. Defense counsel volunteered that he also had no exceptions. Neither party made any other comments and jury deliberations followed.

We first consider the state's argument that the defendant waived or "forfeited" his jury instruction claim. The state contends that our recent decision in *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), in which we concluded that jury instruction claims are

reviewable unless the error has been induced or invited by the defense, represents a departure from our precedent that warrants reconsideration because it incorrectly treats induced error as the only form of waiver, and, even if defense counsel's acquiescence in the instruction as given does not rise to the level of induced or invited error, conduct short of induced error may constitute waiver. The state specifically argues that waiver should be found when, as in the present case, defense counsel acquiesces in the instructions following a meaningful opportunity to review them outside the rush of trial, participates in an on-the-record charge conference designed to allow counsel to identify errors while they still can be remedied and takes no exception after the charge has been delivered, when clarifying instructions can be given. The defendant responds that the state's claim is untenable in light of our recent decision in *Ebron*, in which we considered a claim involving similar facts and explicitly held that the claim had not been waived and was reviewable under *Golding*. We agree with the state that *Ebron* incorrectly construed the law and that the claim in the present case has been waived.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was

constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007). "[I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).

"The mechanism by which a right may be waived . . . varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel." (Citation omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71, 967 A.2d 41 (2009). This court has stated that among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions. See, e.g., *State* v. *Fabricatore*, supra, 281 Conn. 481–82. The United States Supreme Court has expressed a similar view, stating in *New York* v. *Hill*, 528 U.S. 110, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000), that, "[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the con-

duct of the trial. . . . As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. . . . Thus, decisions by counsel are generally given effect as to what arguments to pursue . . . what evidentiary objections to raise . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." (Citations omitted; internal quotation marks omitted.) Id., 114–15; see also *United States* v. *Babul*, 476 F.3d 498, 500 (7th Cir.) ("[C]hoices about trial practice and management—should a given [witness'] testimony be presented? [S]hould a hearsay objection be made? [W]hat language should be proposed for the jury instructions?—are committed to counsel, not only because they are numerous [asking the defendant each time would be impractical] but also because they are the sort of choices for which legal training and experience are most helpful."), cert. denied, 551 U.S. 1126, 127 S. Ct. 2963, 168 L. Ed. 2d 283 (2007).

In the present case, the record is adequate for review and the claim of instructional error on an element of the crime is of constitutional magnitude because it implicates the due process rights of the defendant. See, e.g., *State* v. *Fabricatore*, supra, 281 Conn. 477. Accordingly, the question before this court is whether the defendant's claim has been waived under the third prong of *Golding*.

## A

It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Golding* unless they have been induced or implicitly waived. "The term 'induced error,' or 'invited error,' has been defined as '[a]n error that a party cannot

complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling.' Black's Law Dictionary (7th Ed. 1999) p. 563 . . . ." (Citation omitted.) *State* v. *Gibson*, 270 Conn. 55, 66, 850 A.2d 1040 (2004). This court has found induced error undeserving of appellate review in the context of a jury instruction claim when the defense has affirmatively requested the challenged jury instruction; e.g., *State* v. *Coward*, 292 Conn. 296, 305–306, 972 A.2d 691 (2009); *State* v. *Cruz*, 269 Conn. 97, 106–107, 848 A.2d 445 (2004); *State* v. *Walton*, 227 Conn. 32, 67, 630 A.2d 990 (1993); *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985); or has encouraged or prompted the court to refrain from giving an instruction that arguably should have been given. See *State* v. *Gibson*, supra, 67–68.

By comparison, "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Internal quotation marks omitted.) *State* v. *Tyson*, 86 Conn. App. 607, 612, 862 A.2d 363 (2004), cert. denied, 273 Conn. 927, 873 A.2d 1000 (2005). "Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Internal quotation marks omitted.) Id., 613.

Both this court and the Appellate Court have found implied waiver on grounds broader than those required

for a finding of induced error. These include counsel's failure to take exception or object to the instructions together with (1) acquiescence in, or expressed satisfaction with, the instructions following an opportunity to review them, or (2) references at trial to the underlying issue consistent with acceptance of the instructions ultimately given. See, e.g., *State* v. *Brewer*, 283 Conn. 352, 360–61, 927 A.2d 825 (2007); *State* v. *Fabricatore*, supra, 281 Conn. 481–82; *State* v. *Collazo*, 115 Conn. App. 752, 760, 974 A.2d 729 (2009), cert. denied, 294 Conn. 929, 986 A.2d 1057 (2010); *State* v. *Duncan*, 96 Conn. App. 533, 558–60, 901 A.2d 687, cert. denied, 280 Conn. 912, 908 A.2d 540 (2006); *State* v. *Wortham*, 80 Conn. App. 635, 647–50, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004); *State* v. *Hersey*, 78 Conn. App. 141, 157–59, 826 A.2d 1183, cert. denied, 266 Conn. 903, 832 A.2d 65 (2003); *State* v. *Arluk*, 75 Conn. App. 181, 192–93, 815 A.2d 694 (2003); *State* v. *Cooper*, 38 Conn. App. 661, 664–70, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). The rationale for declining to review jury instruction claims when the instructional error was induced or the claim was implicitly waived is precisely the same: "[T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to . . . ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Gibson*, supra, 270 Conn. 67 (claimed error induced); see also *State* v. *Fabricatore*, supra, 481–82 (claimed error waived).

Despite this substantial precedent, we appeared to signal an end to the concept of implied waiver in *Ebron*, in which we concluded that the defendant had not waived his right to *Golding* review. See *State* v. *Ebron*, supra, 292 Conn. 681–82. In *Ebron*, defense counsel did not file a request to charge but had participated in

discussions at trial with the prosecutor and the court regarding the proposed instructions and had made one request concerning an instruction unrelated to the defendant's claim on appeal. Id., 677. Prior to closing arguments, the trial court summarized on the record its discussions with both attorneys regarding the proposed instructions and then inquired whether either side wanted to make any further changes or corrections. Id., 678–79. Defense counsel responded in the negative. Id., 678. After the court instructed the jury, defense counsel took no exception and confirmed that he had no objection to the instructions as given. Id., 679. We nonetheless concluded in *Ebron* that, "although [defense counsel] acquiesced in the charge that the trial court ultimately gave to the jury, he did not supply, or otherwise advocate for, the . . . language at issue . . . [on] appeal. Put differently, there is no indication that the defendant *actively induced* the trial court to give the . . . instruction that he . . . challenges on appeal, which renders [his] claim reviewable under *Golding*." (Emphasis added.) Id., 681–82. In reaching our conclusion in *Ebron*, we relied on *State* v. *Madigosky*, 291 Conn. 28, 35 n.7, 966 A.2d 730 (2009), which we cited for the proposition that "acquiescence at trial to [a] jury instruction challenged on appeal, without more, does not constitute induced error that would preclude review under *Golding* . . . ." *State* v. *Ebron*, supra, 682.

Shortly thereafter, we concluded in *State* v. *Foster*, 293 Conn. 327, 339–42, 977 A.2d 199 (2009), and *State* v. *Hampton*, supra, 293 Conn. 444–50, that, although the jury instruction claims in those cases were of constitutional magnitude, they were not reviewable under *Golding* because the defense implicitly had waived them by failing to take exception to and expressing satisfaction with the instructions on the multiple occasions when the trial court had solicited counsel's views.

*Ebron* is thus inconsistent with the cases that preceded and directly followed it on the issue of implied waiver. See, e.g., *State* v. *Hampton*, supra, 450 (defendant "waived" jury instruction claim); *State* v. *Foster*, supra, 342 (defendant "waived his [jury instruction] claim"); *State* v. *Holness*, supra, 289 Conn. 542 (defendant could not prevail because jury instruction claim fell "squarely within the waiver doctrine"); *State* v. *Brewer*, supra, 283 Conn. 353 (defendant "waived at trial any claim with regard to the [challenged] instruction"); *State* v. *Fabricatore*, supra, 281 Conn. 481 (defendant "waiv[ed] his right to challenge instruction on appeal"). There is no suggestion in any of the foregoing cases that we improperly used the terms "waiver" or "waived" to describe induced or invited error. Consequently, to the extent we concluded in *Ebron* that the claim of an improper jury instruction is reviewable under *Golding* only if the instructional error is not induced or invited, even if counsel fails to object or demonstrates by other conduct that he or she is satisfied with the charge as given, such a conclusion is at odds with contemporaneous decisions involving similar facts.[16] *Ebron* thus repre-

---

[16] Insofar as *Ebron* stated that *Fabricatore* and *Brewer* were distinguishable on the facts and that *State* v. *Madigosky*, supra, 291 Conn. 28, required the court to conclude that the defendant in that case had not waived his right to *Golding* review, *Ebron* incorrectly construed all three cases. In *Ebron*, the court indicated that its facts differed from those in *Fabricatore* and *Brewer* because the defendants in the two earlier cases had actively induced the trial court to give the instruction challenged on appeal. See *State* v. *Ebron*, supra, 292 Conn. 681–82 ("[T]he present case is distinguishable from *Fabricatore* and *Brewer* because, although the defendant [in *Ebron*] acquiesced in the charge that the trial court ultimately gave to the jury, he *did not supply, or otherwise advocate for, the . . . language at issue [on] appeal.* Put differently, there is no indication that the defendant actively induced the trial court to give the . . . instruction that he . . . challenges on appeal, which renders [his] claim reviewable under *Golding*." [Emphasis added.]). The defendants in *Fabricatore* and *Brewer*, however, did not supply, affirmatively request or advocate for the language in question but failed to object to the proposed instructions and expressed satisfaction with the charge as given, like the defendant in *Ebron*. See *State* v. *Brewer*, supra, 283 Conn. 360; *State* v. *Fabricatore*, supra, 281 Conn. 481. The court thus found waiver, not induced error, in both cases; *State* v. *Brewer*, supra,

sents a departure from our precedent, and we now overrule our holding in that case.

## B

We next consider the state's argument that, if we determine that *Ebron* is inapplicable, the defendant's claim is unreviewable because, by acquiescing in, or expressing satisfaction with, the instructions as given, the defense either waived or forfeited the right to challenge them on appeal. The state specifically contends that implied waiver, which falls short of induced error, may be found when counsel accepts instructions in response to the court's focused inquiry because such acceptance unambiguously communicates that the instructions are fair to the defense, and, therefore, counsel's conduct constitutes a knowing and intelligent relinquishment or abandonment of the right to challenge them on appeal. The state further contends that, even if such conduct does not constitute a knowing and intelligent waiver, counsel's failure to take advantage of opportunities specifically designed for timely focus

353; *State* v. *Fabricatore*, supra, 481; and *Ebron* improperly determined that *Fabricatore* and *Brewer* were distinguishable because they involved induced error.

With respect to *Madigosky*, *Ebron* summarized its holding in a parenthetical as follows: "[A]cquiescence at trial to [a] jury instruction challenged on appeal, without more, does not constitute induced error that would preclude review under Golding . . . ." (Emphasis added.) *State* v. *Ebron*, supra, 292 Conn. 682. In *Madigosky*, however, in which we explained that induced error is error that a party cannot complain of on appeal because the complaining party encouraged or prompted the court to give the challenged instruction, we stated that we merely disagreed with the state's assertion in that case that the defendant was not entitled to *Golding* review because he had "induced" the trial court's conduct "by essentially acquiescing to the court's instruction without objecting to it." *State* v. *Madigosky*, supra, 291 Conn. 35 n.7. We did not analyze the record or reach the waiver issue in *Madigosky* because we determined that the claimed instructional impropriety did not rise to the level of a constitutional violation. Id., 38. Thus, our reasoning in *Ebron*, namely, that *Madigosky* required us to reject the state's argument that the defendant in *Ebron* waived his right to *Golding* review, was incorrect.

on the prevention of instructional error represents a forfeiture that precludes *Golding* review. The state thus suggests that waiver may be found when the defense acquiesces in the jury instructions following the court's careful solicitation of comments from both parties and an adequate opportunity to object to any perceived instructional flaws. We do not entirely agree with the state's legal argument.[17] We conclude, however, that, in light of the particular circumstances of this case, the defendant implicitly waived his claim of instructional error.

The defendant's claim provides this court with a timely opportunity to reexamine and clarify Connecticut law on implied waiver. We begin by comparing waiver and forfeiture and noting that waiver is the "intentional relinquishment or abandonment of a known right," whereas forfeiture is "the failure to make the timely assertion of a right . . . ."[18] (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 71. Failure to make the timely assertion of a constitutional right, however, is not a bar to appellate review of an unpreserved *Golding* claim but, rather, the precise reason why such review is permissible. Accordingly, we reject the state's contention that the defendant's claim, in the absence of waiver,

[17] In declaring that, "[d]espite contending that it is not adopting the state's [approach to waiver], the majority sets out a nearly identical rule"; footnote 1 of Justice Katz' concurring opinion; Justice Katz is apparently referring to our statement that "[w]e do not entirely agree with the state's legal argument." Justice Katz, however, misunderstands that, in referring to the state's "legal argument," we include the argument on forfeiture, with which we do not agree, as well as the argument on waiver, with which we *generally* agree. Moreover, to the extent that we agree with the state's position on waiver, we agree because it is the correct approach and not for any other reason.

[18] We note, in keeping with these principles, that the finding of a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct. See, e.g., *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 70.

should not be reviewed because it was not timely asserted and instead affirm the principle that, if this court determines that the defendant did not expressly or implicitly waive his claim or induce the alleged error, Connecticut law permits review of that claim under the third prong of *Golding* provided that the first two prongs have been satisfied.

Cases in which Connecticut courts have deemed jury instructions implicitly waived under *Golding* fall into three categories.[19] In the first and largest category are cases in which courts have found that the defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal.[20] See, e.g.,

[19] In her concurring opinion, Justice Katz declares that our precedent has established that "a defendant will waive *Golding* review only by affirmatively agreeing to a *specific* jury instruction discussed on the record"; (emphasis in original); and that the majority, in stating that cases involving waiver fall into three categories, relies on a flawed analysis of this court's case law that "goes well beyond the circumscribed approach to waiver outlined in these cases . . . ." Justice Katz specifically claims that the majority mischaracterizes and misconstrues *Fabricatore* and *Brewer* in order to support its "wholly novel system of categorizing unpreserved trial errors under which . . . a defendant will be deemed to have waived *Golding* review of an instructional claim . . . ." We disagree. We merely note that the numerous cases in which this court and the Appellate Court have reviewed instructional error under *Golding* tend to fall into three recognizable categories, which we explain in more detail in the discussion that follows.

[20] Waiver in this group of cases is similar to waiver under federal law, under which unpreserved instructional claims in criminal cases are reviewed for plain error. See Fed. R. Crim. P. 52 (b) ("[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention"). The federal scheme for reviewing trial error generally distinguishes between forfeiture and waiver, applying plain error review when the claim was merely forfeited because the party failed to assert the right to object in a timely manner, and precluding review of the claim when the party knowingly and intentionally waived that right. See *Virgin Islands* v. *Rosa*, 399 F.3d 283, 291 (3d Cir. 2005); see also *United States* v. *Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009). Thus, "[i]f a party's failure to take an . . . exception is simply a matter of oversight, then such oversight qualifies as a correctable 'forfeiture' for the purposes of plain error analysis. If, however, the party consciously refrains from objecting as a tactical matter, then that action constitutes a true 'waiver,' which will negate even plain error review." *United States* v. *Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995).

*State* v. *Hampton*, supra, 293 Conn. 444–50 (defense waived claim of improper instruction on unanimity because court highlighted principle of unanimity twice during charge conferences and defense counsel assented to instruction by stating that instruction was in order, suggesting no changes, and failing to object after court twice asked counsel for changes); *State* v. *Foster*, supra, 293 Conn. 339–42 (defense waived claim of improper instruction on alibi defense by expressing satisfaction with initial alibi instruction, asking court to remind jury that it must determine if defendant was present at scene of crime, and failing to object to court's

"According to the sole applicable test, therefore, waiver must have been made with a full awareness of both the *nature of the right* being abandoned and the *consequences* of the decision to abandon it." (Emphasis in original; internal quotation marks omitted.) *Pace* v. *Bogalusa City School Board*, 403 F.3d 272, 298 (5th Cir.) (Jones, J., concurring in part and dissenting in part), cert. denied sub nom. *Louisiana State Board of Elementary & Secondary Education* v. *Pace*, 546 U.S. 933, 126 S. Ct. 416, 163 L. Ed. 2d 317 (2005). This test is not easily applied. "[Alt]hough the conceptual distinction between a forfeiture and a waiver is clear, in practice the distinction is sometimes elusive." *Virgin Islands* v. *Rosa*, supra, 291.

In resolving claims of waiver, federal courts proceed cautiously and "indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." (Internal quotation marks omitted.) *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); see also, e.g., *Bayo* v. *Napolitano*, 593 F.3d 495, 503 (7th Cir. 2010); *United States* v. *Watford*, 468 F.3d 891, 907 (6th Cir. 2006), cert. denied, 550 U.S. 970, 127 S. Ct. 2876, 167 L. Ed. 2d 1155 (2007). Accordingly, federal courts generally agree that acquiescence is not enough to support the conclusion that a defendant knowingly relinquished or abandoned the right to challenge a jury instruction on appeal. Rather, the record must show that defense counsel not only was aware of the challenged instruction but also stipulated or affirmatively agreed to the instruction by words or other conduct. See *United States* v. *Cruz-Rodriguez*, supra, 570 F.3d 1185 (classic waiver situation occurs when "a party actually identified the issue, deliberately considered it, and then affirmatively acted in a manner that abandoned any claim on the issue" [internal quotation marks omitted]); see also, e.g., *United States* v. *DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009) ("[t]he touchstone of the waiver requirement is whether and to what extent the defendant ha[s] actually approved of the jury instructions assigned as error on appeal" [internal quotation marks omitted]).

supplemental instruction repeating part of initial alibi instruction requested by counsel); *State* v. *Holness,* supra, 289 Conn. 539–45 (defense waived claim that defendant's right of confrontation was violated by failing to object to cross-examination on hearsay statements, requesting curative instruction on unavailable witness that court later gave without objection, and agreeing to proposed language of curative instruction at charge conference, thus indicating clear and unequivocal agreement to limiting instruction on unavailable witness to cure potential defect); *State* v. *Collazo,* supra, 115 Conn. App. 758–60 (defense waived claim by expressing agreement with instruction at charge conference during which court highlighted challenged portion of instruction on liability as accessory or principal and by failing to object after instruction was given); *State* v. *Duncan,* supra, 96 Conn. App. 557–59 (defense waived claim of instructional error on element of alteration of identifying mark or number of firearm and presumptive inference that jury is permitted to draw by failing to object and voicing satisfaction with corrected instruction on presumption language after court discussed correction with counsel); *State* v. *Wortham,* supra, 80 Conn. App. 647–50 (defense waived claim regarding instructions on initial aggressor, provocation and duty to retreat exceptions to self-defense by agreeing, during charge conference, that instructions based on statutory language were proper and highlighting certain evidence during closing argument to persuade jury that exceptions did not apply).

In the second category of cases, Connecticut courts have found waiver when there was no on-the-record discussion of the challenged jury instruction but the defense acquiesced in, or failed to object to, the instruction as given, and engaged in other trial conduct consistent with acceptance of the instruction. See *State* v. *Fabricatore,* supra, 281 Conn. 475, 481–82 and nn.14

and 15 (defense waived claim that trial court improperly included duty to retreat exception in self-defense instruction by failing to object to state's original request to charge, failing to object to instruction as given, expressing satisfaction several times with general instruction on self-defense, failing to object at trial when state referred to duty to retreat in closing arguments, and referring to duty to retreat in his own closing argument);[21] *State* v. *Hersey*, supra, 78 Conn. App.

---

[21] In her concurring opinion, Justice Katz charges the majority with a "gross misreading of the facts in *Fabricatore*" and maintains that there was an on-the-record discussion of the instruction on self-defense, which was later challenged on appeal. We disagree.

In *Fabricatore*, the certified question was whether "the Appellate Court properly conclude[d] that the trial court's improper instruction on the *duty to retreat* constituted harmless error . . . ." (Emphasis added.) *State* v. *Fabricatore*, 275 Conn. 902, 903, 882 A.2d 678 (2005). We stated at the outset of our opinion that "[t]he sole issue in this appeal is whether the Appellate Court properly rejected the defendant's claim that the trial court's self-defense instruction *as it pertained to the duty to retreat* constituted harmful error." (Emphasis added.) *State* v. *Fabricatore*, supra, 281 Conn. 471. Thus, the question on appeal did not relate to the self-defense instruction, generally, but to the duty to retreat portion of the self-defense instruction, which was *not* the subject of an on-the-record discussion in *Fabricatore*.

The facts on which we relied in *Fabricatore* are as follows. After the jury left the courtroom, the prosecutor requested that certain language be added to the self-defense instruction indicating that, "if the jury found the defendant was the *initial aggressor,* the defense of self-defense would no longer be available to the defendant pursuant to [General Statutes] § 53a-19 (c). When the court asked defense counsel if he had any objections *to that addition to the charge,* defense counsel objected, stating twice that the self-defense instruction already had been given as he had requested, and once that he was 'satisfied' with the self-defense instruction." (Emphasis added.) Id., 475. Consequently, the only part of the self-defense instruction to which [counsel] responded with a specific on-the-record comment related to the prosecutor's suggested addition of an initial aggressor instruction. His remarks indicating "satisf[action]" with the self-defense instruction conveyed that he was satisfied with the instruction on self-defense, generally, and that he did not want the court to add the initial aggressor instruction that the prosecutor had requested. Thereafter, we concluded that the defendant had waived *Golding* review of the propriety of the duty to retreat instruction because "defense counsel not only failed to object to the instruction as given or to the state's original request to charge the jury with the duty to retreat . . . but clearly expressed his satisfaction with that instruction, and in fact subsequently

157–59 (defense waived claim that court failed to instruct that state must prove existence of valid protective order by stipulating to order's existence, referring to order at trial and failing to object when state referred to order at trial); *State* v. *Arluk*, supra, 75 Conn. App. 192–93 (defense waived claim that court failed to instruct that state must prove existence of valid protective order by referring to order several times at trial and failing to object when state referred to order); *State* v. *Cooper*, supra, 38 Conn. App. 669–71 (defense waived claim by failing to object and making statements throughout trial tantamount to stipulation regarding element omitted from instruction). Thus, Connecticut courts have found implicit waiver when defense counsel did not object to the challenged instruction for what

argued that the [self-defense] instruction as given was proper. Indeed, defense counsel himself addressed the duty to retreat in his own summation [and failed to object to the state's references to the duty to retreat in its summation and rebuttal summation]. Thus, the [defense] accepted the duty to retreat theory presented by the prosecutor, and *openly acquiesced at trial,* thereby waiving [the] right to challenge the instruction on appeal." (Emphasis added.) Id., 481. Notably absent from this list of reasons is any reference whatsoever to an on-the-record discussion of the duty to retreat instruction itself. Accordingly, it is Justice Katz who misreads the facts in *Fabricatore* and misunderstands that the basis for our conclusion that the defendant in that case had waived his jury instruction claim was *not* an explicit acknowledgment and acceptance of the duty to retreat instruction in an on-the-record discussion with the court.

In insisting that it was "fully apparent throughout the on-the-record discussions regarding the instruction" that the defendant was challenging the inclusion of the duty to retreat instruction; footnote 6 of Justice Katz' concurring opinion; Justice Katz fails to recognize that the defendant was challenging the prosecutor's request for an initial aggressor instruction. Insofar as Justice Katz also relies on the fact that defense counsel expressed satisfaction with the instruction, did not take exception to the prosecutor's reference to the duty to retreat in his summation and addressed the duty to retreat in his own summation, counsel's actions represented either express acquiescence in the instruction as given or trial conduct indicating acceptance of the instruction. Consequently, the record clearly shows that, although defense counsel did not engage in an on-the-record discussion with the court on the duty to retreat, he waived the defendant's right to challenge the instruction on appeal.

clearly appeared, on the basis of counsel's trial conduct, to have been tactical reasons. This is in accord with case law stating that "a party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him. . . . *Golding* is not intended to give an appellant a second bite at the apple." (Citation omitted; internal quotation marks omitted.) *State* v. *Browne*, 84 Conn. App. 351, 383 n.22, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

In the third category of cases, Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them. See, e.g., *State* v. *Brewer*, supra, 283 Conn. 360 (defense waived claim regarding unanimity portion of lesser offense instruction by failing to take exception to instruction as given and expressing satisfaction with general instruction after court asked counsel if lesser offense instruction was instruction that counsel had requested).[22] In these

---

[22] In her concurring opinion, Justice Katz reasserts her claim that the majority opinion suffers from a "misapprehension of our case law" because, in *Brewer*, defense counsel and the trial court discussed on the record the "specific jury instruction later challenged," and defense counsel explicitly acquiesced in the instruction as given. We disagree.

In *Brewer*, we stated that the defendant's sole claim on appeal was that, "pursuant to *State* v. *Sawyer*, 227 Conn. 566, 576, 630 A.2d 1064 (1993), the trial court improperly instructed the jury that it must unanimously [find] the defendant [not guilty] of the murder charge before it properly could consider a lesser included charge of first degree reckless manslaughter (acquittal first instruction)." *State* v. *Brewer*, supra, 283 Conn. 353. Defense counsel in *Brewer* had requested the lesser included offense instruction, which the court gave as an " 'exercise in caution' " over the state's objection; id., 360; and had conceded that the instructions as given were correct in the law because they complied with the requirement of unanimity outlined in *Sawyer*; id.; but claimed that the unanimity requirement violated the defendant's constitutional rights to a jury trial and due process of law. Id., 355. We subsequently concluded in *Brewer* that the defendant had waived his claim because defense counsel "specifically expressed his satisfaction with that instruction when queried by the trial court." Id., 361. We disagree

cases, in which there was no evidence that the court held an on-the-record discussion of the challenged instruction or that defense counsel failed to object for obvious tactical reasons, the court nonetheless determined that, because counsel had been provided with a meaningful opportunity to review and identify flaws in

---

with Justice Katz, however, that the language that we used in *Brewer* can be construed to mean that the unanimity requirement was discussed on the record because a fair reading of the record unequivocally demonstrates that the unanimity requirement never was mentioned. See id., 357 n.7. After asking if counsel had any exceptions to the jury instructions, both sides replied in the negative. Id. Upon asking a second time, the prosecutor responded that the state did not believe that the defense was entitled to a lesser included offense instruction. Id. The court then expressed ambivalence about giving such an instruction, stating that "[i]t's often very difficult to figure out whether an offense is a lesser included offense. . . . I'm not totally convinced that it's a lesser included offense, but charging on it . . . makes more sense. . . . [S]o as an exercise in caution, I've decided to go along with the request of the defense on this even though I'm not sure that it's appropriate and give the . . . lesser included that they requested and . . . this was the only one that you requested and . . . this was the right one as far as you were concerned, correct?" (Citation omitted; internal quotation marks omitted.) Id. Defense counsel replied: "That is correct, Your Honor." (Internal quotation marks omitted.) Id.

On the basis of this colloquy, several conclusions can be drawn. First, the discussion concerned whether the court should give the instruction on the lesser included offense of reckless manslaughter, not whether the instruction incorrectly stated the law or was constitutionally defective. Second, the court indicated that it was giving the instruction because defense counsel had requested it and then asked counsel if the lesser included offense to which the instruction referred was "the right one . . . ." (Internal quotation marks omitted.) Id. Third, defense counsel responded that it was. Id. Neither counsel nor the court referred to the unanimity portion of the instruction. Although this colloquy and defense counsel's prior statement that he had no exceptions to the jury instructions suggest that counsel was satisfied with the instructions and thus waived a claim of instructional error concerning the unanimity requirement, there is no basis for Justice Katz' conclusion that the unanimity portion of the instruction was specifically discussed on the record, especially when counsel's only contribution to the discussion was his perfunctory, "[t]hat is correct, Your Honor," which was in response to the court's simple question of whether it had instructed on the proper lesser included offense. Accordingly, Justice Katz' assertion that there was an explicit, on-the-record discussion of the unanimity instruction is unsupportable.

the instructions, and had expressed satisfaction with the instructions proposed or given, it could infer counsel's knowledge of the alleged impropriety and voluntary relinquishment of the right to challenge the instructions on appeal. This contrasts with the federal approach, in which courts generally do not infer that a claim has been implicitly waived unless defense counsel has approved the challenged instruction at trial following an on-the-record discussion with the court. See footnote 20 of this opinion; see also *United States* v. *Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) (finding waiver because defense counsel indicated challenged instruction was satisfactory); *United States* v. *Sanders*, 520 F.3d 699, 702 (7th Cir. 2008) (finding waiver because defense counsel agreed to, and argued in favor of, challenged instruction).

In the present case, which falls within this third category, the state argues that defense counsel's acquiescence in the jury instructions, as evidenced by counsel's affirmative responses to the trial court's inquiries at the charge conference and thereafter, was sufficient to convey that the instructions "[were] fair to the defense . . . and should be deemed to constitute a knowing and intelligent waiver." The state adds that reviewing a new claim of error on appeal runs afoul of counsel's implicitly expressed tactical determination that the jury instruction was suitable, and that, if counsel's choice is later questioned, the proper remedy is to evaluate the matter in a habeas proceeding alleging ineffective assistance of counsel in which there will be a fully developed record. The defendant, continuing to rely on *Ebron*, responds that defense counsel's participation in the charge conference does not foreclose *Golding* review.

We conclude that, when the trial court provides counsel with a copy of the proposed jury instructions, allows

a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case.[23] See *State* v. *Hampton*, supra, 293 Conn. 450 (claim waived on basis of record); *State* v. *Fabricatore*, supra, 281 Conn. 481–82 (claim waived under facts of case); see also *United States* v. *Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (examining evidence in record to determine if claim was waived); but cf. *United States* v. *Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008) (record "devoid of any evidence" that counsel abandoned claim), cert. denied, 556 U.S. 1201, 129 S. Ct. 2034, 173 L. Ed. 2d 1120 (2009); *United States* v. *Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) (no evidence in record that claim was waived), cert. denied, 552 U.S. 1129, 128 S. Ct. 951, 169 L. Ed. 2d 782 (2008).

It is well established that implied waiver, as alleged in this case, arises from an *inference* that the defendant knowingly and voluntarily relinquished the right in question. See, e.g., *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002 (2007) ("Waiver

[23] The standard that we describe would not allow waiver to be presumed from a silent record or from defense counsel's mere acquiescence in, or failure to object to, the jury instructions. A silent record, by definition, would not satisfy the standard because there would be no factual basis from which the court could infer a waiver, and mere acquiescence or failure to object, without more, would provide an insufficient basis for a finding of waiver because there would be no evidence from which the court could determine whether counsel had been given a meaningful opportunity to review, comment on and express satisfaction with the instructions, or whether counsel had, in fact, expressed such satisfaction before or after the instructions were given.

does not have to be express . . . but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." [Internal quotation marks omitted.]); see also *State* v. *Gore,* 288 Conn. 770, 781–82, 955 A.2d 1 (2008) (evidence insufficient to permit inference that defendant waived right to jury trial); *Martin* v. *Flanagan,* 259 Conn. 487, 499–500, 789 A.2d 979 (2002) (evidence insufficient to permit inference that defendant waived privilege against self-incrimination). It also is well established that any such inference must be based on a course of conduct. See, e.g., *State* v. *Woods,* 297 Conn. 569, 583, 4 A.3d 236 (2010) (inquiry dependent on conduct of defendant and other factual considerations); see also *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (question of waiver must be determined on "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the [person waiving the right]"). Although we agree with the concurring justices that evidence of an on-the-record discussion of the challenged instruction supports an inference of waiver, we believe that a similar inference is supported by evidence that counsel had a meaningful opportunity to review and comment on the proposed instruction and did, in fact, convey his affirmative acceptance thereof.

We emphasize that this is not a less stringent standard than the standard, or standards, advocated by the concurring justices.[24] Although it might be the better prac-

[24] Having joined each other's opinions, it is difficult to determine whether the concurring justices agree on a single standard, because the standards articulated in their individual opinions appear to be quite different, if not incompatible. For example, Justice Katz states that nontactical, implied "waiver results only when: (1) the specific instruction that is later challenged is brought to the attention of defense counsel; (2) that instruction is discussed on the record; and (3) defense counsel nonetheless explicitly and actually approves of the instruction," whereas Justice Palmer states that waiver "cannot be [found] . . . in the absence of a record clearly demonstra-

tice for the trial court to read the proposed instructions line by line and ask after each instruction whether defense counsel agrees, we fail to see a meaningful distinction between repeatedly asking counsel if he or she has any issues with the proposed charge and requesting comments from counsel after the court reads each section of the charge. In fact, there may be cases in which it is not the better practice to infer waiver on the basis of an on-the-record discussion. For example, defense counsel may agree to a last minute instructional change only to realize, upon further reflection after the trial, that he or she did not fully understand the change and that the instruction was incorrect, when the flaw might have been identified in time for counsel to object had there been an opportunity to review the change in writing and in less pressing circumstances before the jury was charged. Accordingly, the notion that waiver should be found only when there is an on-the-record discussion of the challenged instruction because it is the best way to ensure that counsel was aware of, and thus understood, the instruction is problematical.[25]

ting, either expressly or impliedly, counsel's knowledge that the charge, at least potentially, was constitutionally infirm and that counsel, in the exercise of his [or her] professional judgment, decided to forgo any [objection] concerning that possible infirmity." Thus, the standard articulated by Justice Katz, unlike that articulated by Justice Palmer, would not require evidence that counsel agreed to a constitutionally flawed jury instruction despite knowledge of the flaw.

[25] We also believe that Justice Palmer's view that waiver should not be found "in the absence of a record clearly demonstrating, *either* expressly or impliedly, counsel's knowledge that the charge, at least potentially, was constitutionally infirm and that counsel, in the exercise of his [or her] professional judgment, decided to forgo any claim concerning that possible infirmity"; (emphasis in original); is internally inconsistent because there appears to be no way that counsel may clearly demonstrate such knowledge except by expressly informing the court. Accordingly, Justice Palmer's standard effectively eviscerates the concept of implied waiver in favor of express waiver, despite his use of the word "implied."

Moreover, Justice Palmer's understanding of implied waiver is not how Connecticut's reviewing courts have construed implied waiver in the past. See, e.g., *State* v. *Hampton*, supra, 293 Conn. 449–50 (defense waived claim of improper instruction on unanimity because unanimity was highlighted

C

In adopting the standard set forth in this opinion, we also rely on (1) the widely recognized presumption that

twice by court during charge conferences, counsel was given complete copy of revised instructions to review, and counsel assented to instruction by stating that instructions were " 'in order,' " suggesting no changes, and failing to object after court twice asked counsel for changes, additions or deletions to instructions); *State* v. *Foster*, supra, 293 Conn. 340–42 (defense waived claim of improper instruction on alibi defense by expressing satisfaction with initial alibi instruction, asking court to remind jury that it must determine if defendant was present at crime scene and failing to object to court's supplemental instruction repeating part of initial alibi instruction that counsel had requested); *State* v. *Collazo*, supra, 115 Conn. App. 760 (defense waived claim by expressing agreement with instruction at charge conference during which court highlighted challenged portion of instruction on liability as accessory or principal and by stating that it had no objection after instruction was given). It is also not how federal courts typically have construed implied waiver in the past. As we previously noted; see footnote 20 of this opinion; most federal courts proceed on the theory that the challenged instruction must be discussed on the record and that defense counsel must have stipulated or affirmatively agreed to the instruction by words or other conduct. See, e.g., *United States* v. *Polouizzi*, supra, 564 F.3d 153 (finding waiver because defense counsel indicated to trial court that challenged instruction was satisfactory); *United States* v. *Sanders*, 520 F.3d 702 (finding waiver because defense counsel agreed to, and argued in favor of, challenged instruction); see also *United States* v. *DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009) ("[t]he touchstone of the waiver requirement is whether and to what extent the defendant ha[s] actually approved of the jury instructions assigned as error on appeal" [internal quotation marks omitted]). Indeed, in her concurring opinion, Justice Katz cites these and several other cases in support of this theory. See, e.g., *United States* v. *Conner*, 583 F.3d 1011, 1026–27 (7th Cir. 2009) (finding waiver because defense counsel expressly stated that she agreed with challenged instruction); *United States* v. *Hamilton*, supra, 499 F.3d 736 (finding no waiver because court did not ask defense counsel if he agreed to instructions or ask counsel about specific instruction challenged on appeal). In the very few federal cases in which the court found *no* waiver because the record contained no evidence of trial counsel's knowledge that the challenged instruction was flawed, the facts are distinguishable. See, e.g., *Virgin Islands* v. *Rosa*, 399 F.3d 283, 290–91 (3d Cir. 2005) (finding no waiver despite multiple, on-the-record discussions of challenged instruction with trial counsel because record clearly showed that counsel's "failure to object, and moreover his agreement on at least three occasions to the erroneous jury instructions, stemmed from the circumstance that he was unaware of the correct rule of law or, if aware of it, did not realize that the intent instruction misstated it"); *United States* v. *Perez*,

counsel is competent and capable of acting on behalf of

116 F.3d 840, 845 (9th Cir. 1997) (finding no waiver even though trial counsel invited error by submitting flawed instruction to court, because record indicated that neither court nor parties' attorneys were aware of recently decided case requiring new element to be submitted to jury, and record thus lacked evidence that counsel "affirmatively acted to relinquish a known right"). It is the idea that counsel had sufficient *notice* of, and accepted, the instruction to be given, not that counsel actually knew and expressed an awareness that the instruction was constitutionally infirm, that has always informed the decisions of this court on implied waiver and that lies at the heart of most federal case law on this issue, with different courts and jurisdictions disagreeing as to the amount and type of evidence required to conclude that counsel was sufficiently aware of the instruction and its possible ramifications to make a finding of waiver. In other words, implied waiver rests on the "legal fiction" that, if counsel had sufficient notice of the jury instructions and was aware of their content, an *inference*, or "assumption" of fact; Black's Law Dictionary (9th Ed. 2009) p. 976 (defining "legal fiction"); can be made that counsel also was aware of any potential constitutional defect that the instructions may have contained and, with full understanding of that defect, opted to refrain from objecting for strategic reasons. Evidence in the record that counsel *actually* was aware of a constitutional defect in the jury instructions and intentionally chose not to object has, to our knowledge, *never* been required by this court or by any federal court in order to find implicit waiver of a jury instruction claim. When federal courts have relied on actual knowledge of counsel in *rejecting* a finding of waiver, it appears to have been only in circumstances in which the record clearly showed that counsel believed that the instructions were correct and was unaware that they were flawed. See *Virgin Islands* v. *Rosa*, supra, 287, 290–91; *United States* v. *Perez*, supra, 845.

Indeed, if the law were as Justice Palmer would like it to be, the presumption of competent counsel on which this court has relied in past cases involving implied waiver would not survive, because counsel could not concede on the record that a jury instruction was constitutionally defective and forgo an objection, even for reasons of trial strategy, without exposing himself or herself to the almost certain filing of a habeas claim of ineffective assistance following a conviction.

We also take issue with Justice Palmer's conclusion that "counsel who does not wish to have a reviewing court treat his failure to object as a waiver for *Golding* purposes may avoid such treatment simply by informing the trial court that he has not raised a constitutional challenge to the charge *because he is unaware of any such claim, and not because he has elected to waive the claim*"; (emphasis in original); and that an "express . . . disavow[al]" of waiver "would trump any finding of implied waiver by this court or the Appellate Court . . . ." Such a conclusion is logically flawed because an admission by counsel that he is unaware of a constitutional claim can mean only one of two things, namely, that competent counsel,

the defendant in matters concerning trial management, including waiver of the defendant's right to challenge a jury instruction, (2) our rules of practice, which provide for substantial participation by counsel in formulating and reviewing jury instructions, (3) basic principles of fundamental fairness that favor placing responsibility

which Justice Palmer recognizes may be properly presumed, has intentionally waived the right to raise a constitutional challenge on appeal or that counsel is ineffective because he fails to recognize the existence of a constitutional challenge. To determine which is the case is best examined in a habeas proceeding, in which the record can be fully developed and trial counsel may testify about his reasons for acting as he did. Furthermore, Justice Palmer cites no legal support for a blanket preservation by trial counsel of all constitutional challenges to jury instructions merely on the basis of counsel's in-court statement that he or she is "unaware" of a constitutional violation. Finally, such a ploy could open up a "Pandora's box," flooding Connecticut courts with cases alleging improper jury instructions on every conceivable issue and making a mockery of the trial court's attempt to query and solicit counsel's input on the jury instructions. It also would conflict directly with the mandate in rule 1.1 of the Rules of Professional Conduct that requires adequate preparation by counsel in representing a client, which presumably would include sufficient familiarity with the jury instructions to identify instructions that are constitutionally flawed. See Rules of Professional Conduct 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."). Accordingly, we unequivocally reject as legally unsupportable the assertion that counsel may expressly disavow waiver by informing the trial court that he is "unaware" of any constitutional infirmities in the jury instructions.

We finally disagree with Justice Palmer's view that there is far less reason to bar appellate review of jury instruction claims under the principle of implied waiver than unpreserved claims of prosecutorial impropriety during closing argument, where defense counsel sits through the argument and raises no objection. Trial strategy aside, which may be reason in either circumstance to refrain from objecting, counsel has much more opportunity to identify instructional error than prosecutorial impropriety because counsel has a meaningful opportunity to review the jury instructions and to suggest revisions or corrections, whereas, in the case of prosecutorial impropriety, counsel must make spontaneous, on-the-spot decisions regarding when to object during closing argument, a task not easily accomplished when the argument is passionate, its pace is very rapid and counsel is attempting to make mental or written notes regarding points that require a response. We thus disagree with Justice Palmer's conclusion that the majority's decision "cannot be squared with the approach that this court has taken with respect to unpreserved claims of prosecutorial impropriety during closing argument"; footnote 11 of Justice Palmer's concurring opinion; because it fails to acknowledge the substantial differences between the two scenarios.

with the trial court and the parties' counsel to take all necessary measures at the time of trial to ensure that the instructions are correct, and (4) the availability of habeas review to determine whether counsel's failure to take exception, or to suggest any changes, to the jury instructions constituted ineffective assistance and caused prejudice, thus requiring a new trial. We discuss each of these considerations in turn.[26]

1

With respect to the first consideration, we repeatedly have relied on the presumption of competent counsel when determining whether a defendant's waiver of a constitutional right or statutory privilege has been knowing and intelligent. See, e.g., *State* v. *Reid,* 277 Conn. 764, 781–84, 894 A.2d 963 (2006) (concluding that defendant entered knowing and voluntary guilty plea, which operated as implicit waiver of several constitutional rights, including privilege against self-incrimination, in part based on presumption that, "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit"); *State* v. *Lopez,* 269 Conn. 799, 801–802, 850 A.2d 143 (2004) (rejecting

---

[26] Justice Palmer argues that none of these considerations has any bearing on whether counsel in this particular case knowingly and intelligently waived the defendant's right to a constitutionally adequate jury instruction, and, in any event, such considerations are unpersuasive and policy driven. We disagree. Although we believe it is self-evident that a finding of valid waiver in any given case must be based on an examination of the facts and circumstances as revealed in the record; see *State* v. *Hampton,* supra, 293 Conn. 450 (claim waived on basis of facts in record); *State* v. *Fabricatore,* supra, 281 Conn. 481–82 (claim waived under facts of case); Justice Palmer apparently misunderstands that the considerations that we discuss do not, in and of *themselves,* constitute the applicable standard but merely serve as *justification* for that standard. Finally, we note that these considerations are not policy driven but are based on legal principles that are firmly embedded in the case law of this state and other jurisdictions, and in our rules of practice. Consequently, Justice Palmer's critique is not based on a proper understanding of the standard articulated in this opinion.

Appellate Court's conclusion that ordinary presumption, in cases of guilty pleas, that defense counsel has informed defendant of elements of crimes charged must be supported by evidence in record that positively indicates that defendant had opportunity to discuss plea agreement with his attorney and concluding, instead, that Appellate Court misstated law in defendant's favor and that, "even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . Thus, unless a record contains some positive suggestion that the defendant's attorney had *not* informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." [Citations omitted; emphasis in original; internal quotation marks omitted.]); *State* v. *Ross*, 269 Conn. 213, 294–95, 849 A.2d 648 (2004) (concluding that defendant implicitly waived statutory psychiatrist-patient privilege, in part because court "must assume that the defendant's experienced and highly competent counsel knew that the results of the . . . psychiatric examination could be used in rebuttal [if he raised impaired mental status as a mitigating claim] and informed the defendant of the potential scope of the . . . examination . . . and that the defendant's decision to claim mental impairment was made intelligently and with full knowledge of the consequences" [citation omitted; internal quotation marks omitted]); *State* v. *Steiger*, 218 Conn. 349, 369–70, 590 A.2d 408 (1991) (concluding that defendant implicitly waived sixth amendment right to consult with counsel as to nature and scope of psychiatric examination and to presence of counsel at psychiatric examination, in part because "the defendant filed his notice of defense of mental disease or defect approximately seven months

before the psychiatric examination, [and therefore] we can safely assume that the defendant's experienced and highly competent counsel knew that the results of the state's psychiatric examination could be used in rebuttal and informed the defendant of the potential nature and scope of the state's examination"). We have likewise concluded, with respect to a claim that the defendant's right of confrontation under the sixth and fourteenth amendments to the United States constitution had been violated because the trial court had permitted the state to introduce certain hearsay statements during the defendant's trial, that the claim had been waived at trial because defense counsel had agreed to a limiting instruction pertaining to the statements. See *State* v. *Holness*, supra, 289 Conn. 542–43. As we explained in *Holness*, "when . . . counsel has waived a potential . . . claim [under the confrontation clause of the sixth amendment] in the exercise of his or her professional judgment . . . [it may be] presume[d] that defense counsel was familiar with [the law] and . . . acted competently in determining that the [court's] limiting instruction was adequate to safeguard the defendant's [constitutional] rights. To conclude otherwise would require the trial court to canvass defense counsel with respect to counsel's understanding of the relevant constitutional principles before accepting counsel's agreement on how to proceed. . . . [T]here is nothing in our criminal law that supports such a requirement." Id., 544. Our nation's highest court has recognized a similar presumption in contexts apart from ineffective assistance of counsel, stating that a defendant's fundamental due process "right to be heard [in a court of law] would be, in many cases, of little avail if it did not comprehend the right to be heard by [competent] counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with [a] crime, he is incapable, generally, of

determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he [has] a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell* v. *Alabama*, 287 U.S. 45, 68–69, 53 S. Ct. 55, 77 L. Ed. 58 (1932); see also *Buchanan* v. *Kentucky*, 483 U.S. 402, 424, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987) (concluding that petitioner's constitutional right to counsel had not been violated because "[the] petitioner's counsel himself requested the psychiatric evaluation . . . [and, thus, it could] be assumed—and there are no allegations to the contrary—that defense counsel consulted with [the] petitioner about the nature of this examination"); *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) ("Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.").

2

The presumption of competent counsel articulated by the United States Supreme Court and in the case law of this state also is consistent with rule 1.1 of the Rules of Professional Conduct, which is applicable to all practicing attorneys in Connecticut and directs that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

The presumption of competent counsel has special meaning in the context of a jury instruction claim because our rules of practice contain seven provisions that encourage attorneys to participate in formulating jury instructions by providing detailed guidance on how to proceed. Practice Book § 42-16 informs counsel that it is advisable to file a written request to charge and provides that there will be no appellate consideration of instructional error unless such a request is filed or an exception to the charge is taken immediately following its delivery. Practice Book §§ 42-17 and 42-18 further encourage the filing of requests to charge by explaining when they must be filed, how and when they may be amended, and their proper form and content. Practice Book § 42-19 provides that the court, if requested by counsel, shall hold a charge conference that is on the record, or summarized on the record, informing counsel at the close of evidence of the substance of the proposed instructions. Practice Book § 42-24 discusses modification of the instructions for purposes of correction or clarification after an exception is taken or upon the court's own motion. Practice Book § 42-25 provides that additional instructions may be necessary "to avoid undue emphasis" on the correcting or clarifying instructions and that such additional instructions shall be given pursuant to the procedures described in Practice Book § 42-16 allowing counsel to take exception to the

instructions that were given. Finally, Practice Book § 42-27 addresses situations in which the jury requests additional instructions after the start of deliberations and provides that counsel shall be given notice and an opportunity to make suggestions regarding the additional instructions.

On the basis of these rules, we conclude, first, that trial courts *expect* significant participation by counsel in formulating jury instructions because there would be no reason for our rules to provide such guidance if little or no participation was anticipated. We also conclude that competent counsel, being cognizant of our rules, is aware that there are multiple opportunities to request specific instructions, that exceptions or objections to the instructions proposed or given may be taken or raised at various times, and that a charge conference may be requested to consider the instructions and any changes or modifications thereto that counsel deems necessary to ensure that they are correct. Accordingly, reviewing courts in Connecticut have good reason to conclude that counsel knowingly and intentionally waived the right to challenge a jury instruction when the trial court has provided the parties with a meaningful opportunity to review and discuss the instructions, to request changes or modifications before and after the instructions are given, and to comment on the instructions while there is still time to correct them.[27]

---

[27] In her concurring opinion, Justice Katz asserts that, contrary to the presumption that counsel is both competent and ethical, "the majority's approach allows appellate judges to presume, from nearly silent records, that trial counsel's failure to object to an instruction derived from strategic contrivance rather than mere negligence." We do not agree. It is Justice Katz who contravenes the presumption that counsel is competent because she would deny waiver in all cases in which counsel failed to bring the specific instructional error to the trial court's attention, thus implying that any other valid instructional error was overlooked or not identified because counsel was either incompetent or unethical. In contrast, the majority decision specifically rejects the presumption that all acquiescence at trial to the jury instructions must be due to counsel's incompetence or unethical conduct. Not only do we not believe that all strategic decisions concerning

3

The approach set forth in our decision also is in accord with basic principles of fundamental fairness. On the one hand, trial courts will be encouraged to hold meaningful and participatory on-the-record charge conferences,[28] give counsel written copies of the proposed instructions and provide counsel with sufficient time to review them because such actions not only assist the court in carrying out its duty to ensure that the instructions are fair and just, but also have the salutary effect of helping to avoid a possible retrial and the waste of judicial resources that such a proceeding

jury instructions are unethical, but we build on the presumption of competent counsel by presuming that counsel would have identified the instructional error if given a proper and meaningful opportunity to review the instructions and by disallowing review upon counsel's failure to object or express satisfaction with the instructions proposed or given. Accordingly, Justice Katz demonstrates a fundamental misunderstanding of the approach articulated in the majority opinion.

[28] Justice Katz again misconstrues our reasoning when she declares in her concurring opinion that the majority has devised a rule "that depends on the use of the [charge] conference to determine whether the defendant has waived his right to challenge a defective instruction" and has singled out the defendant to bear the costs of instructional error that may occur at trial. Although we have stated that an on-the-record charge conference provides an important opportunity for the defendant to raise specific concerns regarding instructional error, we have also stated that a defendant will not be deemed to have waived such a claim unless the court has provided counsel with a copy of the proposed instructions and a *meaningful opportunity* for review and comment, which can be determined in any given case only by a close examination of the record. The significance of a meaningful opportunity for review and comment cannot be underestimated. Holding an on-the-record charge conference, and even providing counsel with an advance copy of the instructions, will not necessarily be sufficient in all cases to constitute waiver of *Golding* review if defense counsel has not been afforded adequate time, under the circumstances, to examine the instructions and to identify any potential flaws. Thus, Justice Katz' assertion that the charge conference is the most important factor in determining whether a claim of instructional error has been waived and that the majority has singled out the defendant to bear the consequences of an erroneous instruction is without foundation because the obligations of the trial court, as described herein, are equally, if not more, significant than those of the prosecutor and the defense.

might entail. See *State* v. *Griggs*, 288 Conn. 116, 124, 951 A.2d 531 (2008) ("[t]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law" [internal quotation marks omitted]). Correspondingly, counsel will be encouraged to take advantage of the opportunities provided by the rules of practice, that is, to submit a request to charge, to seek an on-the-record charge conference and to raise objections whenever necessary because such actions will protect the parties' interests, create an adequate record for review and avoid the waiver of a legitimate claim when the trial court has given counsel sufficient opportunity to participate in the instruction process. See *State* v. *Cobb*, 199 Conn. 322, 329, 507 A.2d 457 (1986) ("If defense counsel did not approve of . . . the charge, then he should have alerted the court to his previous remarks and suggested whatever curative language he deemed most appropriate. . . . An exception at this point . . . would have served the important function of alerting the trial court to what defense counsel believed was erroneous while there was time to correct it without ordering a retrial." [Citation omitted.]). Accordingly, the judicial system is better served from all perspectives when waiver is inferred from counsel's affirmative acceptance of the jury instructions following a meaningful opportunity to review them.

4

A final consideration is the availability of habeas review if a defendant wishes to bring a claim of ineffective assistance of counsel to contest the reviewing court's conclusion that the jury instruction claim was waived. As we have stated in other cases, a habeas proceeding provides a superior forum for the review of a claim of ineffective assistance because it provides the opportunity for an evidentiary hearing in which the attorney whose conduct is challenged may testify

regarding the reasons he did not contest the instruction at trial. See *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). A habeas proceeding thus enables the court to determine whether counsel's failure to take exception or otherwise to participate in formulating the instructions was due to mere incompetence or to counsel's trial strategy, which would not be possible in a direct appeal in which there is no possibility of an evidentiary hearing. An aggrieved party is thus not without recourse in the event that the court deems a claim of instructional impropriety waived on appeal.[29]

To the extent Justice Katz claims in her concurrence that the majority "fails to acknowledge the importance of the review of unpreserved errors to our ability to declare and clarify the law," we disagree. Justice Katz apparently presumes that many valid claims of instructional error will not be reviewed in light of our decision in this case because they will be deemed waived, but such a presumption is purely speculative. The more likely effect is that attorneys will take exception to jury instructions more often if they are perceived as incorrect, thus properly preserving their clients' claims for review. Moreover, Justice Katz ignores the fact that

---

[29] Justice Palmer, citing *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460–62, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006), concludes that a habeas remedy predicated on a claim of ineffective assistance of counsel would not be available in cases in which counsel is deemed to have waived a constitutional claim for failure to raise a novel legal theory or argument at trial because there would be no basis for such a claim. We find this logic unpersuasive. In *Ledbetter*, we stated that, "[t]o conclude that counsel is obligated to recognize and to preserve previously undecided constitutional claims, the viability of which is purely speculative, would be to require criminal defense lawyers to [be clairvoyant] . . . ." Id., 462. For reasons similar to those expressed in *Ledbetter*, an implied waiver of a previously undecided speculative constitutional claim cannot be founded on a silent record. Moreover, we do not identify, or carve out an exception, for such claims, as Justice Palmer contends, but merely respond to his argument that they would not be entitled to *Golding* review under the standard set forth in the majority opinion.

reviewing courts already routinely consider numerous, properly preserved constitutional claims of instructional impropriety on direct appeal. Finally, claims of instructional error deemed waived on direct appeal will still be reviewed in habeas proceedings because the habeas court must address the merits of the underlying claim in deciding whether there was ineffective assistance of counsel. See, e.g., *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 812, 975 A.2d 42 (2009). Consequently, there simply is no support for the view that our decision will have a detrimental effect on the ability of Connecticut courts to articulate and clarify the law.

### D

Turning to the facts of the present case, we conclude that defense counsel's repeated statements indicating his affirmative acceptance of the proposed jury instructions after being given a meaningful opportunity to review them constituted an implicit waiver of the defendant's claim of instructional error. Following the state's request to charge, the court noted on the record that it had asked defense counsel in chambers the previous day if he intended to file a request to charge, and counsel had replied in the negative. The court then asked counsel if he still did not intend to file a request to charge, and counsel affirmed that he had no such intent. The court thus reminded defense counsel on two different occasions of his right to file a request to charge, and counsel declined each time to file such a request.[30]

---

[30] Justice Katz states that the failure to file a request to charge has no bearing on a *Golding* inquiry because filing such a request would properly preserve the claim of error for direct appellate review. Although we agree that the effect of filing a request to charge is to preserve properly a claim of instructional error, we note, with respect to the present case, that defense counsel, by declining twice to file a request to charge in response to the court's direct invitation, indicated that he had no special concerns regarding the instructions on intent that he wished to discuss with the court.

The court also held two additional charge conferences to discuss the instructions. Two days after defense counsel reaffirmed that he had no intention of filing a request to charge, the court asked counsel if there was anything he wanted to discuss. Counsel replied that he wanted to discuss those portions of the state's request to charge relating to the assault counts and one other minor matter but did not raise any issues regarding the intent instruction pertaining to kidnapping and unlawful restraint. When the court asked counsel if there was "[a]nything else" he wanted to discuss, counsel replied, "[n]o, Your Honor. I don't think so."[31] Several days later, after the court advised counsel that it had prepared the final instructions and would give each attorney a written copy to review, defense counsel stated that his copy was "downstairs," apparently referring to the clerk's office, but that he did not have any major revisions. The court thus concluded on the record that the instructions were complete and that there was no need for another conference to discuss the instructions, to which counsel made no response. Finally, after the instructions were given, both the prosecutor and defense counsel stated that they had no exceptions to those instructions.

Defense counsel's acceptance of the jury instructions was in sharp contrast to the conduct of the prosecutor, who made repeated attempts to obtain certain instructional language by filing a request to charge, asking several questions at the first charge conference regarding the instructions on assault, and reviewing a copy of

---

[31] Defense counsel's discussion of unrelated parts of the jury charge at an on-the-record charge conference was significant because it demonstrated that counsel was sufficiently familiar with the instructions to identify those portions of the instructions with which he disagreed. Thus, to the extent that he selectively discussed certain portions of the instructions but not others, one may presume that he had knowledge of the portions that he did not discuss and found them to be proper, thus waiving the defendant's right to challenge them on direct appeal.

the completed instructions the night before the second charge conference so that he would be prepared to discuss any remaining issues. Thus, it is clear that defense counsel had several meaningful opportunities to participate in fashioning the jury instructions and to review and object to any language contained therein because his counterpart, the prosecutor, repeatedly made his own views known to the court.[32] We therefore conclude that the defendant implicitly waived his right to challenge the instructions on intent.

The judgment is affirmed.

In this opinion ROGERS, C. J., and VERTEFEUILLE and McLACHLAN, Js., concurred.

KATZ, J., with whom NORCOTT and PALMER, Js., join, concurring. The issue presented in this case—under what circumstances a defendant will be deemed to have waived appellate review of a constitutional challenge to a jury instruction under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989)—is one of the most significant decisions with which this court recently has wrestled. This court's jurisprudence, namely our well established doctrines of waiver and induced error, dictate that *Golding* review of unpreserved instructional errors should be foreclosed *only* when the record reflects that the defendant, through defense counsel, knowingly and intentionally relinquished his objection to the error. Instead, the majority conflates and mischaracterizes this court's precedents in order to lend credence to a wholly novel system of categorizing unpreserved trial errors under which, essentially, a

[32] Although Justice Katz finds the prosecutor's repeated on-the-record conversations with the court wholly irrelevant to this analysis, we believe that they should have served as a vivid reminder to defense counsel that, if he had any concerns regarding the instruction on intent, he could have brought them to the court's attention. Counsel's failure to do so on multiple occasions thus suggests that he agreed with the instructions that were given.

defendant will be deemed to have waived *Golding* review of an instructional claim merely by participating in a charging conference and failing to object to jury instructions proposed by the court or the state.[1] In order to justify this approach, the majority employs a public policy analysis that contravenes the purpose and underlying principles, established over forty years of jurisprudence, of appellate review of unpreserved trial errors.

I

In setting forth its new rule, the majority relies on a flawed analysis of this court's case law concerning waiver of *Golding* review of trial errors.[2] In order to

[1] It is worth noting that, although the majority insists that it does not adopt the state's approach to waiver of *Golding* review of instructional errors, there is no significant difference, either in description or application, between the state's proposed rule and the rule adopted by the majority. The majority characterizes the state as setting out a rule under which waiver occurs when a defendant acquiesces in jury instructions following a meaningful opportunity to review them outside the rush of trial, participates in a charging conference on the record and takes no exception to the charge after it has been delivered. Despite contending that it is not adopting the state's rule, the majority sets out a nearly identical rule under which waiver occurs when the trial court provides a set of written jury instructions to defense counsel, allows a meaningful review of and the opportunity to comment on those instructions, and defense counsel acquiesces to the instructions. See part II of this concurring opinion.

[2] I agree with the majority that this court has recognized that *Golding* analysis cannot be used to review unpreserved claims of induced, also known as invited, error regardless of the constitutional nature of the error. *State* v. *Cruz*, 269 Conn. 97, 104, 848 A.2d 445 (2004); *State* v. *Gibson*, 270 Conn. 55, 66, 850 A.2d 1040 (2004). I note that this court has found induced or invited error of *Golding* instructional claims *only* when a defendant has submitted or suggested the instructional language that he later challenges. See *State* v. *Coward*, 292 Conn. 296, 305, 972 A.2d 691 (2009) ("[w]ith respect to *Golding* review, the defendant concedes that he induced the claimed error by requesting the very jury charge that he now claims was improper"); *State* v. *Madigosky*, 291 Conn. 28, 35 n.7, 966 A.2d 730 (2009) (mere acquiescence to instruction did not constitute induced error); *State* v. *Griggs*, 288 Conn. 116, 126 n.13, 951 A.2d 531 (2008) ("[t]here was no induced instructional error in this case because the defendant had not submitted a request to charge or suggested any instructional language"); *State* v. *Gibson*, supra, 67–68 (defendant induced error by failing to respond affirmatively to court's question as to whether he wanted limiting instruction, *failing to correct*

provide a context for this analysis, I begin with the fundamental principles and purpose of *Golding* review. It is well settled that, as a general rule, appellants are not entitled to appellate review of errors that were not distinctly raised at trial. See *State* v. *Evans*, 165 Conn. 61, 66, 327 A.2d 576 (1973). Nonetheless, nearly forty years ago in *Evans*, this court recognized "two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court. The first is . . . [when] a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise [when] the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." (Citation omitted.)[3] Id., 70. Thereafter, in *State* v. *Golding*, supra, 213 Conn. 239–40, the court reformulated the standard announced in *State* v. *Evans*, supra, 61, after the state had urged it to revise the *Evans* standard of review for errors not preserved at trial "because the words used by the standard though easily said lend themselves to inconsistent application." *State* v. *Golding*, supra, 239. The court decided "neither to adopt a pure plain error standard for alleged constitutional violations, nor to attempt to reconcile past *Evans* decisions. Instead, [i]t articulate[d] guidelines designed to facilitate a less burdensome, more uniform application of the present *Evans* standard in future cases involving alleged constitutional violations that are raised for the first time on appeal." Id. Relying on the methodology of *State* v. *Whistnant*, 179 Conn. 576, 427

court's statement that defendant had requested that court not give any limiting instructions, and failing to file written request to charge or to object to charge); see *State* v. *Cruz*, supra, 105 n.7 (defendant induced error by affirmatively requesting jury instruction).

[3] The present case concerns only the second exceptional circumstance identified in *Evans*.

A.2d 414 (1980), the court adopted the now familiar four part *Golding* test.[4]

This history reflects that the rationale of *Golding* and its predecessors is that "fundamental constitutional rights are of such importance that appellate courts should review claims of alleged constitutional violations even when a defendant fails to take an exception to the alleged violation at the trial court level." *State* v. *Wright*, 114 Conn. App. 448, 461, 969 A.2d 827 (2009). The *Evans/Golding* rubric was intended to be capacious enough to rectify any constitutional trial court errors that affect the outcome of a criminal case. "[B]ecause constitutional claims implicate fundamental rights, it . . . would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review." *State* v. *Canales*, 281 Conn. 572, 581, 916 A.2d 767 (2007).

Despite our recognition of the essential function of *Golding* review, we also have recognized that a defendant, through defense counsel, may, in a few narrowly defined instances, waive such review. Within the specific context of jury instructions, we have drawn from the traditional understanding of waiver as a knowing

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

and intentional relinquishment of a right; see *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); in holding that a defendant waives appellate review of even a properly preserved instructional error only when the record demonstrates that the defendant affirmatively and knowingly accepted the instruction.[5] See *State* v. *Whitford*, 260 Conn. 610, 632–33, 799 A.2d 1034 (2002) (defendant waived preserved challenge to instructional error because "the defendant's conduct at trial indicated that he accepted the supplemental charge as sufficient to cure the claimed instructional error"); *State* v. *Jones*, 193 Conn. 70, 87–89, 475 A.2d 1087 (1984) (defendant waived preserved challenge to erroneous charge by participating in fashioning supplemental instruction and failing to object to that instruction). Recently, we explicitly extended the waiver doctrine to *Golding* review of instructional errors. See *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007) ("A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." [Citations omitted; internal quotation marks omitted.]). Our cases applying waiver to *Golding* review are consistent with prior cases applying waiver to appellate review, generally, in that they indicate that a defendant will waive *Golding* review only by affirmatively agreeing to a *specific* jury instruction discussed on the record. See, e.g., *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008) (defense counsel waived challenge to jury instruction by agreeing to limiting instruction suggested by state); *State* v. *Fabricatore*, supra, 481 (defense counsel waived challenge to jury instruction by failing to object to instruction, expressing satisfaction with instruction,

---

[5] This includes review for plain error. See *State* v. *Pierce*, 269 Conn. 442, 452, 849 A.2d 375 (2004).

arguing that instruction was proper and adopting language of instruction in his summation).

The majority goes well beyond the circumscribed approach to waiver outlined in these cases by improperly expanding our waiver cases into three categories: (1) express acknowledgment of and agreement with an instruction; (2) trial conduct consistent with acceptance of the instruction, even when there was no on-the-record consideration of the instruction; and (3) acquiescence to an instruction following one or more opportunities to review the instruction. I agree with the majority that waiver occurs in the first category of cases—when the record demonstrates a defendant's express acknowledgment and knowing acceptance of a specific instruction. The remaining two categories do not accord, however, with our established case law and the majority misconstrues the holdings and approaches of *State* v. *Fabricatore*, supra, 281 Conn. 469, and *State* v. *Brewer*, 283 Conn. 352, 927 A.2d 825 (2007), in order to support these novel categories of waiver.

The majority relies on *Fabricatore* for the proposition that this court has found waiver when there was no on-the-record discussion of the challenged jury instruction, but the defendant engaged in other trial conduct consistent with acceptance of the instruction. This represents a gross misreading of the facts in *Fabricatore*. As a preliminary matter, it is clear that, in that case, there had been an on-the-record discussion concerning the later challenged instruction on self-defense, which included the duty to retreat.[6] *State* v. *Fabricatore*, supra,

---

[6] The majority disputes my reading of *Fabricatore* based in part on its conclusion that, in that case, there was never an on-the-record discussion of the allegedly improper language. In doing so, the majority fails to recognize that the defendant challenged the mere inclusion of the duty to retreat language in the self-defense instruction, an impropriety that was fully apparent throughout the on-the-record discussions regarding the instruction. See *State* v. *Fabricatore*, supra, 281 Conn. 474–75 (providing text of self-defense instruction); see also *State* v. *Brewer*, supra, 283 Conn. 360 ("[i]n *Fabricatore*, the defendant challenged the trial court's inclusion of the duty to retreat in

281 Conn. 475 n.10 (providing excerpt of discussion between defense counsel and trial court). Additionally, the state had requested an instruction on the duty to retreat, thereby explicitly putting the defendant on notice that that limitation on the defense was under consideration. Moreover, we specifically noted: "[D]efense counsel not only failed to object to the instruction as given or to the state's original request to charge the jury with the duty to retreat, but clearly expressed his satisfaction with that instruction, and in fact subsequently argued that the instruction as given was proper. Indeed, defense counsel himself addressed the duty to retreat in his own summation." Id., 481. The facts in *Fabricatore* therefore fit squarely within our previously established doctrine of waiver, which required explicit acknowledgment and acceptance of a later challenged instruction. See *State* v. *Holness*, supra, 289 Conn. 543; *State* v. *Whitford*, supra, 260 Conn. 632–33; *State* v. *Jones*, supra, 193 Conn. 87–89.

In addition, the majority relies on *Brewer* for the proposition that this court has recognized yet a third category of cases within which an appellant waives review of an instructional error by failing to object to, and acquiescing in, the instructions following one or more opportunities to review them and contends that the present case, in which defense counsel acquiesced generally to a set of jury instructions, is analogous to *Brewer*. Again, these conclusions represent a misapprehension of our case law. In *Brewer*, defense counsel and the trial court discussed on the record the later challenged instruction and defense counsel explicitly acquiesced to the instruction as given. *State* v. *Brewer*,

the jury charge on self-defense because the case did not involve the use of deadly force"). Moreover, despite the blatancy of what he later claimed to be an error, defense counsel expressed his satisfaction with the charge, failed to object to the prosecutor's reference in his summation to the duty to retreat and went so far as to address the duty to retreat in his summation.

supra, 283 Conn. 357. We noted: "Defense counsel took no exceptions from the instructions given by the trial court. The state, however, registered its objection to the trial court's inclusion of a lesser included offense charge. The trial court explained its reasons for including the lesser included offense charge, and then specifically asked defense counsel if the charge as read was *what had been requested*. Defense counsel responded: 'That is correct, Your Honor.' " (Emphasis in original.) Id. In addition, we emphasized: "This is not an instance of defense counsel's failure to take exception to the instruction as given, which included the language that he now attacks, but rather is a case in which he specifically expressed his satisfaction with that instruction when queried by the trial court. As we recently concluded in [*State* v. *Fabricatore*, supra, 281 Conn. 481–82], '[u]nder this factual situation, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial.' " *State* v. *Brewer*, supra, 360–61. It is apparent that this case involved explicit discussion, on the record, of the specific jury instruction later challenged by the defendant, followed by the defendant's express agreement to that instruction.[7] Accordingly, *Brewer*

---

[7] The majority contends that the on-the-record discussion in the trial court concerned whether the court should give an instruction on lesser included offenses, not the unanimity requirement. I acknowledge that the excerpt of the colloquy cited by this court; *State* v. *Brewer*, supra, 283 Conn. 357 n.7; contains no express discussion of the unanimity requirement. In *Brewer*, however, we were responding to the defendant's claim that he had not waived review of his right to challenge the unanimity instruction required by *State* v. *Sawyer*, 227 Conn. 566, 576, 630 A.2d 1064 (1993), because any such claim to the trial court would have been futile. We reiterated that, "as we previously discussed, this is not a case of silence in the face of an allegedly improper charge; instead, it is a case in which defense counsel specifically expressed his satisfaction with that charge. Such an affirmative action by counsel simply cannot lend support to a claim of futility." *State* v. *Brewer*, supra, 361 n.11. Because *Sawyer* specifically concerns unanimity instructions, I believe that the court's statement in *Brewer* that the defendant had "expressed his satisfaction with *that charge*"; (emphasis added) id.; necessarily refers to the unanimity charge.

lends no credence to the majority's conclusion that we have long recognized the facts in the present case to constitute waiver.

Rather than acknowledge the limited nature of waiver reflected in these cases, the majority unduly focuses on the purportedly unworkable holding in *State* v. *Ebron*, 292 Conn. 656, 682, 975 A.2d 17 (2009). I recognize that our response to the Appellate Court's treatment of the doctrines of induced error and waiver[8] in that case may not have been entirely clear. Nonetheless, our case law, consistent with the principles and purpose of *Golding*, provides a workable framework for evaluating when the conduct of defense counsel forecloses *Golding* review of a constitutional challenge, including jury instructions. As suggested in *Fabricatore*, the

---

[8] Although this court has maintained that any finding of waiver must derive from a defendant's clear and affirmative acceptance or suggestion of specific instructional language, some panels of the Appellate Court have suggested that a defendant's *mere acquiescence* to a set of jury instructions may preclude *Golding* review. See *State* v. *Velez*, 113 Conn. App. 347, 357–59, 966 A.2d 743 (failure to take exception to trial court's response to jury question about proof of intent constituted waiver under *Fabricatore*), cert. denied, 291 Conn. 917, 970 A.2d 729 (2009); *State* v. *Akande*, 111 Conn. App. 596, 608–609, 960 A.2d 1045 (2008) ("We decline to draw a distinction between defense counsel stating that he had no problem with a jury charge that he specifically requested and defense counsel stating that he had no problem with a jury charge that he had not specifically requested. There is also no difference between counsel stating that he has no comment about the charge and counsel stating that the charge as read was correct. In both cases, we find the objection to be waived."), aff'd, 299 Conn. 551, 11 A.3d 140 (2011); *State* v. *Farmer*, 108 Conn. App. 82, 88, 946 A.2d 1262 (failure to file request to charge or take exception to constancy of accusation instruction constituted waiver under *Fabricatore*), cert. denied, 288 Conn. 914, 954 A.2d 185 (2008). In these cases, the Appellate Court construed the defendant's acquiescence to constitute a waiver of *Golding* review, and in the process, conflated the distinction between waiver and failure to preserve. Partly in response to this approach by the Appellate Court, we attempted to clarify our approach to induced error and waiver in *State* v. *Ebron*, supra, 292 Conn. 682. In doing so, we suggested that waiver occurred only when the defendant actively induced the later challenged error. Id.; see also *State* v. *Ovechka*, 118 Conn. App. 733, 741, 984 A.2d 796 ("[w]here there is an indication that the defendant actively induced the trial court to give the [improper] instruction that he now challenges on appeal; *State* v. *Ebron*, [supra, 682]; the defendant's claim is waived and thus not reviewable under *Golding*" [internal quotation marks omitted]), cert. denied, 295 Conn. 905, 989 A.2d 120 (2010).

proper lens through which to view this inquiry derives from the well established principle of waiver. "Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim." (Internal quotation marks omitted.) *State* v. *Velez*, 113 Conn. App. 347, 357–58, 966 A.2d 743, cert. denied, 291 Conn. 917, 970 A.2d 729 (2009).

Accordingly, consistent with our case law, waiver is effectuated by what this court has deemed "active inducement" of an error or any other intentional relinquishment or abandonment of a known right or privilege. Moreover, waiver may be implied from defense counsel's conduct only when that conduct demonstrates that counsel affirmatively and knowingly forwent any objection to the later challenged instruction. Consistent with this framework, within the specific context of jury instructions, waiver includes both actively inducing an error by providing the later challenged instruction to the court (which we have called induced or invited error) as well as affirmatively embracing an instruction offered by opposing counsel or the court, so long as that conduct demonstrates that counsel affirmatively and knowingly forwent any objection to the later challenged instruction.[9]

---

[9] I reiterate for the purpose of clarity that, as in the federal courts, invited or induced error is a subset of waiver. The federal courts deem instructions

Because this approach requires a case-by-case analysis to determine when waiver occurs, which has not been entirely helpful to the Appellate Court, I suggest that we turn to related federal case law to further illuminate the distinction between waived error and unpreserved error. Cf. *State* v. *Evans*, supra, 165 Conn. 69 ("Only in the most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. The same general rule has been adopted by the federal courts."). Federal review of unpreserved trial errors—so called "plain error" review—is governed by rule 52 (b) of the Federal Rules of Criminal Procedure.[10]

that the defendant expressly *provides* to the court to be invited errors, and generally treat such errors as a subset of waiver, thus foreclosing review. See *United States* v. *Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) ("the waiver doctrine has been applied in situations of invited error"); *United States* v. *Hertular*, 562 F.3d 433, 444 (2d Cir. 2009) ("a defendant who has invited a challenged charge has waived any right to appellate review" [internal quotation marks omitted]); *United States* v. *Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) ("[h]ad [the challenged instruction] been one of the defendant's requested instructions, any objection to giving it would indeed have been waived . . . it would have been a case of 'invited error' " [citations omitted]), cert. denied, 552 U.S. 1129, 128 S. Ct. 951, 169 L. Ed. 2d 782 (2008); *United States* v. *Wall*, 349 F.3d 18, 24 (1st Cir. 2003) (defendant waived error by requesting and specifically approving later challenged charge). One federal circuit, however, has suggested that invited errors should be treated differently than waiver, and may be subject to review for " 'manifest injustice.' " *United States* v. *Rodriguez*, 602 F.3d 346, 350–51 (5th Cir. 2010).

[10] Rule 52 (b) of the Federal Rules of Criminal Procedure provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Although the federal courts refer to this doctrine as plain error review, it is treated in practical application like this court's *Golding* review.

The United States Supreme Court has set forth a four-pronged test to determine whether a trial error may be reviewed under rule 52 (b). "First, there must be an error or defect—some sort of [d]eviation from a legal rule— that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. . . . Third, the error must have affected the appellant's substantial rights . . . . Fourth . . . if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Puckett*

In applying this rule, the federal courts distinguish between errors that are merely "forfeited" (what we call unpreserved errors), which may be reviewed, and those that are "waived," which cannot be reviewed. See, e.g., *Government of the Virgin Islands* v. *Rosa*, 399 F.3d 283, 290–91 (3d Cir. 2005) ("[s]tated most simply, where there was forfeiture, we apply a plain error analysis; where there was waiver, we do not" [internal quotation marks omitted]). With the exception of this distinction in terminology, the approach of the federal courts is consistent with that of this court. The United States Supreme Court has explained: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *United States* v. *Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). In applying the waiver doctrine, federal courts have emphasized that, in order to find waiver, the defendant who allegedly waived the error must have done so knowingly, intentionally and deliberately. For example, the Tenth Circuit Court of Appeals has explained: "[W]aiver is accomplished by intent, but forfeiture comes about through neglect . . . . Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it." (Citations omitted.) *United States* v. *Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009).

Federal cases applying the waiver doctrine reveal three guiding principles regarding when a defendant, through defense counsel, will be deemed to have waived appellate review by agreeing to a later challenged error. First, to establish waiver, the record itself must demonstrate the party's awareness of an issue and his deliber-

v. *United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009); see also *United States* v. *Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

ate decision to forgo a challenge; such conditions are never presumed or inferred.[11] See, e.g., *United States* v. *Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008) ("The record is simply devoid of any evidence that defense counsel knew of the argument or considered making it. We will not presume a waiver or infer one from a record as sparse as this."); *United States* v. *Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) ("The government asks us to pick through the record with a fine-tooth comb and infer that the defendant's lawyer must have thought the instruction okay, in which event his failure to object would be deliberate . . . . But we cannot find any indication of that, and doubts should be resolved against a finding of waiver . . . for by precluding judicial review it invites a challenge that the lawyer's failure to object constituted ineffective assistance of counsel." [Citations omitted.]), cert. denied, 552 U.S. 1129, 128 S. Ct. 951, 169 L. Ed. 2d 782 (2008); *United States* v. *Perez*, 116 F.3d 840, 845 (9th Cir. 1997) ("[w]hat we are concerned with is evidence in the record that the defendant was aware of, i.e., knew of, the relinquished or abandoned right").

A second, but related, principle holds that, in the context of challenges to jury instructions, waiver results only when: (1) the *specific* instruction that is later challenged is brought to the attention of defense counsel; (2) that instruction is discussed on the record; and (3) defense counsel nonetheless explicitly and actually

---

[11] In suggesting that Justice Palmer and I have adopted inconsistent standards, the majority apparently overlooks my adoption of this fundamental principle of waiver, which states in general terms the same view articulated in Justice Palmer's concurring opinion regarding application of that principle in the specific context of *Golding* review—that waiver "cannot be deemed . . . in the absence of a record clearly demonstrating, *either* expressly *or* impliedly, counsel's knowledge that the charge, at least potentially, was constitutionally infirm and that counsel, in the exercise of his [or her] professional judgment, decided to forgo any claim concerning that possible infirmity." (Emphasis in original.) Therefore, the claimed inconsistency is illusory.

approves of the instruction.[12] See *United States* v. *Conner*, 583 F.3d 1011, 1026 (7th Cir. 2009) (The court concluded that waiver had been established when "[the defendant] did not merely fail to object to the court's instruction regarding aiding and abetting. During the charging conference, [defense] counsel expressly stated that she preferred [the later challenged] aiding and abetting instruction over the alternative. At no time in this discussion did she indicate that she objected to instructing the jury on aiding and abetting at all."); *United States* v. *Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) ("Faced with the parties' incompatible positions regarding the proposed definition . . . the [D]istrict [C]ourt proposed a third option. Presented with this option, [the defendant] indicated that the instruction was satisfactory. In these circumstances, by agreeing that the instruction was satisfactory, [the defendant] waived the right to challenge the instruction on appeal."); *United States* v. *Sanders*, 520 F.3d 699, 702 (7th Cir. 2008) (finding waiver when, during colloquy, defense counsel expressly and repeatedly stated that later challenged instruction was acceptable to him); *United States* v. *Perez*, supra, 116 F.3d 845 ("[w]aiver occurred . . . because the defendant considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction"); *United States* v. *Lakich*, 23 F.3d 1203, 1207–1208 (7th Cir. 1994) (finding waiver when trial court and counsel had been alerted to issue with court's original jury instruction by note from jury, court

[12] I reiterate that these principles are consistent with this court's approach to waiver of jury instructions. See, e.g., *State* v. *Holness*, supra, 289 Conn. 543 (defense counsel waived challenge to jury instruction by agreeing to limiting instruction suggested by state); *State* v. *Fabricatore*, supra, 281 Conn. 481 (defense counsel waived challenge to jury instruction by failing to object to challenge, expressing satisfaction with instruction, arguing that instruction was proper and adopting language of instruction in his summation).

gave attorneys overnight to consider ways to remedy problem, and defense counsel agreed to precise instruction defendant later challenged). Courts decline to find waiver when any one of these elements is missing. See *United States* v. *Wisecarver*, 598 F.3d 982, 988 (8th Cir. 2010) (The court concluded that no waiver had been established when it was "not clear that [defense counsel's statement] was an 'intentional relinquishment or abandonment' of a known right . . . . He did not, for example, explicitly say that he had no objection to the [later challenged] aspect of the instruction or that it was a correct statement of the law that he was willing to be bound by."); *United States* v. *DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009) (defense counsel thanking judge after judge rejected counsel's proposed instruction not "the . . . type of actual approval of a jury instruction that would constitute waiver"); *United States* v. *Hamilton*, supra, 499 F.3d 736 ("a failure to object, which for all we know was inadvertent—there were nearly fifty pages of instructions, and while the judge invited objections he didn't ask the defendant's lawyer whether the lawyer agreed to the instructions to which he did not object, or ask the lawyer specifically about [the later challenged] instruction—is not an '*intentional* relinquishment of a known right,' the canonical definition of waiver" [emphasis in original]); *Government of the Virgin Islands* v. *Rosa*, supra, 399 F.3d 293 (no waiver when "[t]here is no indication that [the defendant's] attorney knew of and considered the controlling law, and despite being aware of the [flaw], accepted the flawed instruction").

Third, there may indeed be a rare instance of tactical waiver of an improper instruction that a defendant later challenges on appeal. While findings of tactical waiver are necessarily fact-bound, and therefore difficult to reduce to clear rules, they do reveal a common thread. Tactical waiver may result from a failure to object; see

*United States* v. *Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995); but courts find waiver only when the tactical value of defense counsel's action or inaction, as reflected in the record, is obvious and indisputable, and when the other requirements for waiver are met.[13] See *United States* v. *Quinones*, 511 F.3d 289, 321–22 (2d Cir. 2007) ("We have no doubt that it was a tactical decision for [the] defendants . . . to agree that a life sentence was the only alternative to death. . . . The tactical value of such a concession is obvious."). As a result, most of the cases dealing with tactical waiver do so in the context of an evidentiary claim where the strategic value in not objecting is easiest to recognize. See *United States* v. *Cooper*, 243 F.3d 411, 416 (7th Cir. 2001) ("[t]his was clearly a strategic decision rather than a mere oversight"); *United States* v. *Yu-Leung*, supra, 1122 ("[i]t is apparent that [the defendant's] failure to object at trial to the challenged testimony was a strategic choice"); *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) ("[u]nder these circumstances, we have no difficulty concluding that [the defendant] has waived appellate review of this evidentiary claim").

## II

Ignoring both this court's precedent and well established federal jurisprudence concerning waiver, the majority attempts to use public policy concerns to justify its fabrication of both a new framework for catego-

---

[13] Again, I note that this approach is consistent with our approach to strategic waivers. We have recognized that "[t]o allow the [petitioner] to seek reversal [after] his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Fabricatore*, supra, 281 Conn. 480–81. We have always, however, imposed the same requirements for finding waiver regardless of the suspected motivation or intent behind a defendant's actions, namely, that the record reflects that the waiver was knowing and intentional. Id., 480. I continue to believe that our traditional waiver doctrine is capacious enough to identify and preclude all waivers, including strategic waivers.

rizing waivers and a new rule pursuant to which a defendant waives *Golding* review by participating in a charging conference pursuant to our rules of practice. The majority's analysis of the relevant public policy concerns, however, is unsound. First, it ignores the fundamental principles and purposes of *Golding* review, namely the essential role that *Golding* review plays in the protection of individual constitutional rights. Second, it contradicts several of the implicit understandings and presumptions this court has embraced concerning the value of appellate review of error, and the role of trial and appellate counsel in that process. Finally, it fails to recognize the detrimental effect that the new rule likely will have on the court system and overestimates the positive impact of the new rule in encouraging trial judges to provide meaningful opportunity for the review of jury instructions.

To understand the practical effects of the majority's new rule, and thereby to evaluate the relevant public policy concerns, it is critical to examine closely the application of that rule in the present case. Counsel for the defendant, Marvin Kitchens, essentially participated in several on-the-record conferences in which he declined to raise any concerns related to the instruction at issue in this appeal. The trial court then provided the parties with written jury instructions. At a subsequent conference, the prosecution raised several issues unrelated to the challenged instruction. The trial court asked defense counsel if he had had an opportunity to review the instructions, to which counsel replied, "my copy is downstairs, but I didn't have any major revisions." The court then ended the conference without further comment from the attorneys.

The majority emphasizes several facts about the present case, seemingly in an attempt to demonstrate that defense counsel had a "meaningful" opportunity to review and object to the instructions. First, the majority

notes that the trial court asked defense counsel several times whether he was going to file a request to charge and defense counsel declined to do so. I note, however, that a failure to file a request to charge has no bearing in any *Golding* inquiry because, had defense counsel done so, the error would have been preserved properly for direct appellate review. See *State* v. *Terwilliger*, 294 Conn. 399, 406, 984 A.2d 721 (2009) ("A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20."). Second, the majority notes that defense counsel, the prosecution and the trial court engaged in discussions about unrelated parts of the instruction. I cannot, however, understand how a discussion of one jury instruction bears on whether the failure to object to a *different* jury instruction meets the requirement for waiver, namely, that it was knowing and intelligent. See part III of this concurring opinion. Third, the majority emphasizes the prosecutor's repeated attempts to obtain his preferred instructional language. Again, I fail to comprehend the connection between a prosecutor's actions and whether defense counsel's failure to object to a set of jury instructions constitutes waiver. Accordingly, the majority's opinion effectively stands for the proposition that a defendant waives *Golding* review of an instructional error, even if the challenged instruction is never specifically discussed, as long as the trial court provides a set of written jury instructions, allows defense counsel adequate time to review those instructions, and then holds a charging conference in which defense counsel acquiesces, generally, to the instructions. In other words, if the trial court follows the procedures set forth in the Practice Book concerning jury instructions, a defendant will be denied access to *Golding* review.

Accordingly, the practical effect of the majority's approach contravenes the underlying principles and

purpose of *Golding*—the elimination of the hurdle of "failure to preserve" constitutional claims at the trial court level in order to facilitate appellate review for unpreserved constitutional claims.[14] See part I of this concurring opinion. In devising a rule that depends on the use of the charging conference to determine whether the defendant has waived his right to challenge a defective instruction, the majority, in essence, establishes that participation in that conference and advanced notice of the instructions provide a sufficient basis upon which to presume that, when the defendant nevertheless fails to object to the instruction, he is acting intentionally, as opposed to being merely negligent. This approach undermines this court's exhortation that *Golding* review is intended to *break down* any categorical or absolute bars to appellate review by foreclosing review of an entire class of trial errors. Moreover, by concluding that mere failure to object to an improper instruction constitutes a waiver of the defendant's appellate rights, the majority essentially singles him out to bear the consequences of the error

---

[14] The doctrine of "plain error," that is error that is so fundamental that the defendant will not lose his ability to challenge it on appeal, does not ameliorate a defendant's inability to access *Golding* review. Any reliance on the plain error doctrine as a fallback measure on which defendants may rely is misplaced because "[j]ust as a valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review, a valid waiver also thwarts plain error review of a claim. . . . [The] [p]lain [e]rror [r]ule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the [p]lain [e]rror [r]ule may be applied) and a waiver of that right (to which the [p]lain [e]rror [r]ule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Citation omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009). Therefore, the majority's reframing of implied waiver forecloses both *Golding* review and plain error review when a defendant acquiesces to jury instructions following the charging conference.

despite the equal obligations on the trial court and the prosecutor to identify and to correct the error.

The majority's approach also flies in the face of several fundamental understandings, implicit in our *Golding* jurisprudence, about the nature and value of appellate review of criminal convictions and our expectations of advocates at both the trial and appellate level. First, the majority's approach undervalues the role that appellate review of unpreserved errors plays in fulfilling the appellate courts' essential functions. Appellate courts serve "two basic functions: (1) correction of error (or declaration that no correction is required) in the particular litigation; and (2) declaration of legal principle, by creation, clarification, extension or overruling. These are . . . respectively the corrective and preventive functions." J. Phillips, "The Appellate Review Function: Scope of Review," 47 Law & Contemp. Probs. 1, 2 (Spring 1984). In its approach to public policy concerns, the majority focuses solely on the first function and fails to acknowledge the importance of the review of unpreserved errors to our ability to declare and clarify the law. Instructing the jury is a particularly critical point in a criminal trial; indeed, "[a]n improper instruction has a watershed effect on the jury's understanding of the law." D. Carter, "A Restatement of Exceptions to the Preservation of Error Requirement in Criminal Cases," 46 U. Kan. L. Rev. 947, 960 (1997–1998). Beginning with *Golding* itself, this court has set forth or clarified substantial questions regarding the propriety of jury instructions in cases in which we reviewed unpreserved instructional errors. See, e.g., *State* v. *Cook*, 287 Conn. 237, 250, 947 A.2d 307 (2008) (defendant charged with carrying dangerous weapon entitled to instruction that jury must consider factual circumstances surrounding alleged threat); *State* v. *Flowers*, 278 Conn. 533, 547–48, 898 A.2d 789 (2006) (clarifying proper intent instruction for burglary

charge and setting forth circumstances under which closing argument rectifies improper charge); *State* v. *Scott*, 256 Conn. 517, 528–29, 779 A.2d 702 (2001) (clarifying proper instruction for sexual assault in first degree by fellatio); *State* v. *Golding*, supra, 213 Conn. 238 (concluding that amount obtained by fraud is essential element of crime, and therefore, court must instruct jury concerning it). Indeed, for unpreserved claims advancing novel theories or seeking to overrule established law regarding jury instructions, direct review is the *only* opportunity for the appellate courts to clarify and correct the law, as habeas relief under an ineffective assistance of counsel theory would be foreclosed. See *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 461–62, 880 A.2d 160 (2005) ("[C]ounsel's failure to advance novel legal theories or arguments does not constitute ineffective performance. . . . Nor is counsel required to change then-existing law to provide effective representation." [Citations omitted; internal quotation marks omitted.]), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

Second, in contravention of our presumptions that counsel is both ethical and competent, the majority's approach allows appellate judges to presume, from nearly silent records, that trial counsel's failure to object to an instruction derived from strategic contrivance rather than mere negligence. It is well established that we presume that all trial advocates act within the ethical standards set forth in our Rules of Professional Conduct. See, e.g., *State* v. *Chambers*, 296 Conn. 397, 420, 994 A.2d 1248 (2010) (presuming that defense attorney ethically invoked rule of professional responsibility); *State* v. *Cator*, 256 Conn. 785, 794, 781 A.2d 285 (2001) ("[i]n the absence of evidence to the contrary, this court may presume that the attorney has performed his ethical obligation to inform his client of any potential

conflict"). Although we also presume that attorneys have the competence to provide adequate representation to their clients; see Rules of Professional Conduct 1.1;[15] we do not expect any attorney, especially trial attorneys working under the pressure and intensity of an ongoing trial, to perform flawlessly. We must also recognize that appellate attorneys, with the benefit of time and hindsight, are often able to identify errors inadvertently missed by trial counsel. D. Carter, supra, 46 U. Kan. L. Rev. 951 ("the evolving expertise of appellate counsel assures the presentation of prejudicial [trial] errors"). Our *Golding* jurisprudence is founded on these principles, and any limitation of its scope must take into account the understanding that most trial errors derive from negligence rather than strategic contrivance. See id. ("the American appellate system is premised on the reality that the ordinary procedural default is born of the inadvertence, negligence, inexperience, or incompetence of trial counsel" [internal quotation marks omitted]).

Rather than recognize these principles, the majority's approach depends upon an assumption that the defendant's attorney behaved unethically by knowingly failing to correct a mistake of law in violation of rule 3.3 of the Rules of Professional Conduct.[16] I would not presume, except in the most obvious of cases, that the defendant has engaged in a tactical decision to forgo

---

[15] Rule 1.1 of the Rules of Professional Conduct provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[16] Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly:

"(1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; [or]

"(2) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . ."

an objection to an instruction that he knew to be faulty. In addition to the aforementioned presumption that attorneys behave ethically, I express my reluctance for several other reasons. First, it simply makes no sense for an attorney who recognizes that the court has made a mistake in the instructions to say nothing to the trial court to correct the error in the hopes of challenging the instruction later on appeal, convincing the reviewing court that a true constitutional error was made and that it was harmful to the defendant. In light of the statistics showing that reviewing courts rarely conclude that the defendant can prevail on a *Golding* challenge to an improper jury instruction,[17] not only would an attorney engaging in this behavior be unethical, but he would be incompetent as well. See D. Carter, supra, 46 U. Kan. L. Rev. 951 ("[n]othing is gained from sandbagging, except a disparaged reputation or an attorney grievance claim"); H. Friendly, "Is Innocence Irrelevant? A Collateral Attack on Criminal Judgments," 38 U. Chi. L. Rev. 142, 158 (1970) ("[it] is exceedingly hard to visualize a case where a defendant or his lawyer would deliberately lay aside a meritorious claim so as to raise it after the defendant was jailed"). Second, appellate judges are not mind readers. See *United States* v. *Frokjer*, 415 F.3d 865, 871 (8th Cir. 2005) (declining to find tactical waiver because record not clear enough to determine counsel's state of mind).

[17] From January 1, 2000, to May 5, 2010, this court considered approximately 140 criminal appeals in which a defendant requested *Golding* review, not including cases in which the court determined that the defendant was entitled to other types of appellate review. Of those 140 cases, approximately 70 involved claims for *Golding* review of instructional errors, in which the court found reversible error in only 6 cases.

During the same period, the Appellate Court considered approximately 550 criminal appeals in which a defendant requested *Golding* review or the court, sua sponte, engaged in *Golding* review, not including cases in which the court determined that another legal framework governed its review. Of those 550 cases, approximately 250 involved claims for *Golding* review of instructional error, and the court found reversible error in only 17 cases.

Therefore, any finding that waiver has resulted from a strategic choice should be dependent upon a *demonstrated* inconsistency, apparent from the record, between defense counsel's trial strategy, as reflected in counsel's course of action at trial, and the strategy reflected in the later challenge to the error. See, e.g., *United States* v. *Cooper*, supra, 243 F.3d 416 (counsel waived objection to substance of tip by referring to tip throughout opening statement and closing argument in order to bolster theory of case); *United States* v. *Coonan*, supra, 938 F.2d 1561 (counsel waived objection to evidence concerning violent gang activities by welcoming admission of evidence in order to convince jury that defendant was not violent or brutal enough to gain admission into gang). Again, such a case, by definition, will be rare, and will, in the majority of cases, be governed by our traditional waiver doctrine. See footnote 13 of this concurring opinion. Accordingly, although it may be necessary to acknowledge the existence of strategic waiver, I do not believe that that exception should drive the rule.

Moreover, the majority's new rule likely will have a detrimental impact on the effective functioning of the court system. As a preliminary matter I note that the number of cases in which a defendant obtains reversal of his conviction on the basis of *Golding* review of instructional errors is negligible. See footnote 17 of this concurring opinion. Therefore, attorneys well versed in our *Golding* jurisprudence do not see review under its umbrella as a panacea. Collapsing the distinction between negligence and intentional waiver serves merely to delay resolution of the claimed error and to increase the workload of our trial courts by requiring the defendant to bring a habeas petition for ineffective assistance of counsel. The vast majority of appellants requesting *Golding* review of instructional errors also seek review of properly preserved errors or *Golding*

review of unpreserved noninstructional errors. Under the majority's approach, these appellants will be entitled to a direct appeal of some of their claims before an appellate court, but will have to pursue their unpreserved instructional error claims in a separate habeas proceeding. Even those appellants who seek review only of *Golding* instructional error claims will have to raise those claims on direct appeal in order to preserve them for habeas review.[18] At best, therefore, this approach merely shifts the venue, and thus the responsibility for evaluating these claims to the habeas courts, and, at worst, actually *increases* the net workload of the judicial system.

Finally, I disagree that the majority's approach is likely to impact significantly whether trial courts provide written copies of proposed instructions, afford time to review those instructions and then hold on-the-record charging conferences. First, the majority's rule is premised on the presumption that trial judges will not fulfill their duty to ensure a fair trial without the dangling carrot of limited appellate review. This represents an undeservedly skeptical view of the trial judges of this state that is entirely unsupported by any data or anecdotal evidence. Similarly, the majority's approach is predicated on the presumption that defense counsel will not submit requests to charge or request charging conferences when they recognize potential problematic or important issues relating to the jury instructions. As set forth previously, this contravenes

---

[18] This court has held that *Golding* review is not available for unpreserved claims of error raised for the first time in a habeas appeal. *Safford* v. *Warden*, 223 Conn. 180, 190 n.12, 612 A.2d 1161 (1992); see also *Cupe* v. *Commissioner of Correction*, 68 Conn. App. 262, 271 n.12, 791 A.2d 614 ("*Golding* does not grant . . . authority for collateral review and is . . . inapplicable to habeas proceedings"), cert. denied, 260 Conn. 908, 795 A.2d 544 (2002). Therefore, this leaves defendants in the position of having to raise *Golding* claims on appeal, knowing that the court will deem them to be waived, in order to preserve them for habeas review.

our established presumptions that defense counsel acts competently and ethically, as well as the understanding that *Golding* review provides no incentive for defense counsel to purposefully withhold meritorious legal claims. Finally, even if the majority's approach encourages defense attorneys to file a request to charge concerning instructions that they *identify* as important, and to contest any instructions they *recognize* as erroneous, it will have no impact when defense counsel, through negligence or inadvertence, fails to recognize an erroneous instruction. Indeed, these are the precise errors that *Golding* review is meant to rectify.[19] See part I of this concurring opinion.

## III

Drawing from both this court's precedent and federal precedent, it is evident that a defendant should not be deemed to have waived a challenge to a jury instruction unless the record *clearly* reflects that the defendant was aware of the particular challenged aspect of the instruction and the defendant expressed satisfaction with that part of the instruction.[20] See part II of this concurring opinion. Applying this standard, I cannot agree with the majority that waiver resulted in the present case merely because the defendant failed to take

---

[19] Similarly, the majority's reliance on Practice Book § 42-16 is misplaced. Section 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. . . ." The majority suggests that this provision encourages defense counsel to file a request to charge, but fails to consider that § 42-16 sets forth the procedure by which counsel may properly preserve appellate review of an instruction, and thus is not applicable to *Golding* review. See, e.g., *State* v. *King*, 289 Conn. 496, 502–503, 958 A.2d 731 (2008) (engaging in *Golding* review of instructional error claim despite failure to comply with § 42-16).

[20] The state does not claim that the defendant's actions constituted induced or invited error.

exception to the charge he now challenges. Although the trial court provided a written copy of the instructions and twice asked the parties for their concerns or exceptions, nothing in the record demonstrates that the defendant was aware of the *specific* problem with the instruction at issue in this appeal and nonetheless intentionally relinquished his right to challenge it. Accordingly, I would conclude that the defendant did not waive *Golding* review.

Having determined that the defendant did not waive *Golding* review, I must examine his claim of instructional impropriety. See footnote 4 of this concurring opinion (setting forth four-pronged *Golding* test). Specifically, the defendant claims that the trial court's instructions improperly provided the jury with a definition of "intentionally" that included language concerning general intent, despite the fact that the defendant was charged only with crimes requiring specific intent. He further claims that this instruction improperly allowed the jury to find him guilty of kidnapping and unlawful restraint without determining that he had the specific intent to engage in the proscribed conduct. The state concedes that the instruction was improper, but contends that the instructions were nonetheless constitutionally adequate. I agree with the state.

The record reveals the following undisputed facts, which are relevant to the resolution of this claim. The defendant was charged with, inter alia, kidnapping in the second degree in violation of General Statutes § 53a-94 (a)[21] and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[22] In

---

[21] General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person."

[22] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

instructing the jury on general principles of law, the trial court provided the following definition of intent: "As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct." Later in the charge, the court explained that, to find the defendant guilty of kidnapping in the second degree, the state must prove beyond a reasonable doubt that the defendant abducted the victim, Jennaha Ward. The court further explained: " 'Abduct' means, as it pertains to this case, to restrain a person with intent to prevent his liberation by using or threatening the use of physical force or intimidation. The term 'restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . . You will recall my earlier instructions on intent and apply them here also." The court gave a similar instruction on the charge of unlawful restraint in the first degree, first informing the jury that to find the defendant guilty on the charge, the state must prove beyond a reasonable doubt that the defendant restrained the victim and that such restraint exposed the victim to a substantial risk of physical injury. The court defined " 'restrain' " as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . . You will recall my earlier instructions on intent and apply them here also."

As a preliminary matter, the defendant's claim meets the first two prongs of *Golding* and, therefore, is reviewable. First, the record contains a transcript of the jury instructions, and is therefore adequate for review. Second, it is well established that an improper instruction on an element of an offense is of constitutional magnitude; see *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002) ("[a]n improper instruction on an element of an offense . . . is of constitutional dimension"

[internal quotation marks omitted]); and that specific intent is an essential element of both kidnapping and unlawful restraint. *State* v. *Salamon*, 287 Conn. 509, 542, 572, 949 A.2d 1092 (2008). I, therefore, turn to whether the defendant may prevail on the merits of his claim.

"[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 572–73.

*Salamon* is instructive. That case also involved a crime of specific intent but the trial court improperly had provided only a general intent instruction. We concluded that this impropriety did not require reversal "because the court thereafter accurately explained that, to prove the element of restraint, the state was required to establish that the defendant had restricted the victim's movements intentionally and unlawfully in such a manner so as to interfere substantially with her liberty by confining her without her consent. . . . Under this

explanation, there is no reasonable possibility that the jury could have found the defendant guilty of unlawful restraint unless it first had found that he had restricted the victim's movements with the intent to interfere substantially with her liberty. In other words, because restraint is itself defined in terms that include the requirement of a specific intent, and because the trial court properly instructed the jury on that definition, the defendant was not prejudiced by the trial court's failure to define intent in full compliance with [the definition under General Statutes] § 53a-3 (11)."[23] (Internal quotation marks omitted.) Id., 573–74.

As the state properly concedes in the present case, the trial court's definition of intent incorrectly encompassed both specific and general intent. See *State* v. *Francis*, 246 Conn. 339, 358, 717 A.2d 696 (1998) (although generally it is improper for trial court to provide entire statutory definition of intent when charge required specific intent, no error in context of particular case when jury not misled); *State* v. *Youngs*, 97 Conn. App. 348, 361, 904 A.2d 1240 (same), cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). Therefore, as in *Salamon*, the question is whether it reasonably was possible that the jury relied on the general intent instruction to convict the defendant of a specific intent crime. Reading the jury instructions as a whole, I conclude that it was not reasonably possible that the jury was misled. In the present case, the trial court twice provided the exact same definition of restraint as was provided by the trial court in *Salamon*, which explicitly required the jury to find that the defendant had restricted the victim's movements with the intent to interfere substantially with her liberty. Therefore, I conclude that the trial

[23] General Statutes § 53a-3 (11) provides that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

court's instructions adequately presented the elements of the charges of kidnapping in the second degree and unlawful restraint in the first degree to the jury. Therefore, the defendant has failed to establish that there was a constitutional violation.

Accordingly, I concur.

PALMER, J., with whom KATZ and NORCOTT, Js., join, concurring. I agree with, and join, Justice Katz' thoughtful concurrence. I write separately, however, to underscore why, in my view, the majority is incorrect in finding that defense counsel knowingly and intentionally waived the claim of the defendant, Marvin Kitchens, concerning the constitutionality of the jury charge solely on the basis of counsel's statement that he had no objection to the court's jury instructions after having been afforded a reasonable opportunity to review and comment on those instructions. In reaching its conclusion, the majority disregards the well established principle that, to be effective, the record must demonstrate that counsel's failure to object to the charge on constitutional grounds represented the *intentional* relinquishment of a *known* right. Under the majority's flawed application of the concept of implied waiver, counsel will be found to have purposefully waived any claim that the defendant may have had with respect to his due process right to a proper jury charge, thereby foreclosing appellate review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] even though

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

there is absolutely nothing in the record to demonstrate that counsel actually was aware of any potential defect in the charge. Indeed, the majority concedes that, under its holding, the record will be deemed sufficient to infer that the defense had knowledge of the alleged instructional impropriety and voluntarily relinquished the right to challenge the instruction on appeal, even though the record contains no evidence that the alleged impropriety was induced or invited, that the court had a discussion about the instructional issue with counsel or that counsel otherwise engaged in conduct indicating that the failure to object was tactical rather than inadvertent. Lacking a record establishing both that counsel in the present case was aware of that right and elected to waive it on behalf of the defendant, the majority nevertheless denies the defendant appellate review of a constitutional claim that otherwise satisfies the reviewability requirements of *Golding*. As I explain more fully hereinafter, the majority's approach is predicated on an inference that is not supported by the facts, namely, that, whenever defense counsel has been afforded a fair opportunity to review and comment on the court's instructions, and, thereafter, counsel informs the court that he has no objection to those instructions, it is appropriate to conclude, as a factual matter, that counsel was aware of and consciously rejected *every conceivable constitutional challenge* to the jury instructions. Moreover, the weakness of the majority's analysis is reflected in the fact that, under well established principles of waiver, defense counsel can readily avoid the majority's holding, and thereby ensure *Golding* review of any and all unpreserved claims challenging the constitutionality of the court's instructions, simply by advising the trial court that his failure to raise a constitutional objection is due to the fact that *he is aware of no such objection*, and *not* because of an intent to waive any potential constitutional claims. Finally, the unsound

approach that the majority adopts will make it significantly more difficult, and in some cases impossible, for a defendant to obtain a new trial even when he can establish a deprivation of his due process right to a fair and accurate jury instruction.[2]

Before commencing my review of the majority's analysis, I first set forth several unchallenged principles concerning the issue of waiver. "What suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. *United States* v. *Olano*, 507 U.S. 725, 733 [113 S. Ct. 1770, 123 L. Ed. 2d 508] (1993). For certain fundamental rights, the defendant must personally make an informed waiver. See, e.g., *Johnson* v. *Zerbst*, 304 U.S. 458, [464–65, 58 S. Ct. 1019, 82 L. Ed. 1461] (1938) (right to counsel); *Brookhart* v. *Janis*, 384 U.S. 1, 7–8 [86 S. Ct. 1245, 16 L. Ed. 2d 314] (1966) (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of

---

[2] I do agree with the majority that the present case provides an appropriate opportunity for this court to reexamine and clarify the law on implied waiver as it applies to claims of instructional impropriety under *Golding*, in view of the fact that our previous pronouncements on the subject have hardly been a model of clarity. Although I believe that our decision in *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), comes the closest to setting forth the correct legal principles, to my knowledge, this court has never engaged in a thorough analysis of the concept of implied waiver insofar as it pertains to unpreserved constitutional claims of instructional error. Indeed, to date, this court has not evaluated a claim of implied waiver with express reference to the standard applicable to the waiver of a constitutional right, that is, that, to be effective, such a waiver must reflect the intentional relinquishment of a known right. Consequently, our prior cases in this area are not particularly helpful in resolving the question posed by the present appeal.

the client, the lawyer has—and must have—full authority to manage the conduct of the trial. *Taylor* v. *Illinois*, 484 U.S. 400, [417–18, 108 S. Ct. 646, 98 L. Ed. 2d 798] (1988). As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. *Link* v. *Wabash R. Co.*, 370 U.S. 626, 634 [82 S. Ct. 1386, 8 L. Ed. 2d 734] (1962) . . . . Thus, decisions by counsel are generally given effect as to what arguments to pursue, see *Jones* v. *Barnes*, 463 U.S. 745, 751 [103 S. Ct. 3308, 77 L. Ed. 2d 987] (1983), what evidentiary objections to raise, see *Henry* v. *Mississippi*, 379 U.S. 443, 451 [85 S. Ct. 564, 13 L. Ed. 2d 408] (1965), and what agreements to conclude regarding the admission of evidence, see *United States* v. *McGill*, 11 F.3d 223, [226–27 (1st Cir. 1993)]. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." (Citation omitted; internal quotation marks omitted.) *New York* v. *Hill*, 528 U.S. 110, 114–15, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000); see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71, 967 A.2d 41 (2009) ("It is well settled that a criminal defendant may waive rights guaranteed to him under the constitution. . . . The mechanism by which a right may be waived, however, varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel." [Citations omitted; internal quotation marks omitted.]); *State* v. *Smith*, 289 Conn. 598, 620, 960 A.2d 993 (2008) (same).

There is no dispute that, for reasons of strategy, counsel may knowingly and intentionally waive a defendant's constitutional right to a particular jury instruction despite the fundamental nature of the defendant's due

process entitlement to an adequate jury charge.[3] When such a waiver occurs, the defendant is precluded from appellate review of the defective charge because, "[t]o allow the defendant to seek reversal [after] his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." *State* v. *Fabricatore*, 281 Conn. 469, 480–81, 915 A.2d 872 (2007). In such circumstances, moreover, the defendant cannot satisfy the third *Golding* prong; see footnote 1 of this concurring opinion; because it cannot be said that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240.

Of course, such a waiver may be express or may be implied by conduct. See, e.g., *State* v. *Smith*, supra, 289 Conn. 621. Thus, "[w]aiver does not have to be express . . . but may consist of acts or conduct from which waiver may be implied . . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." *State* v. *Gaskin*, 116 Conn. App. 739, 753, 977 A.2d 681, cert. denied, 294 Conn. 914, 983 A.2d 851 (2009). Both this court and the Appellate Court consistently have concluded, however, that waiver of a constitutionally protected trial right is not valid unless it represents "the intentional relinquishment or abandonment of a known right."[4] (Internal quotation marks

[3] There also is no dispute that the right to a constitutionally adequate jury instruction is a fundamental right. Indeed, this court routinely has concluded that such claims satisfy the second prong of *Golding*, pursuant to which an unpreserved claim is reviewable only if it "is of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40. In fact, in the present case, the majority expressly has acknowledged that the defendant's claim is reviewable under the second *Golding* prong, stating that "the claim of instructional error on an element of the crime is of constitutional magnitude because it implicates the due process rights of the defendant."

[4] This court also has defined waiver as the "voluntary relinquishment or abandonment—express or implied—of a legal right or notice." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 449, 978 A.2d

omitted.) *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 71; accord *State* v. *Woods*, 297 Conn. 569, 583, 4 A.3d 236 (2010); *State* v. *Gaskin*, supra, 753; *State* v. *Thomas W.*, 115 Conn. App. 467, 487, 974 A.2d 19, cert. granted, 294 Conn. 911, 983 A.2d 276 (2009). This standard, which aptly has been characterized as a strict one; see, e.g., *State* v. *Woods*, supra, 583; first was adopted by the United States Supreme Court more than seventy years ago; see *Johnson* v. *Zerbst*, supra, 304 U.S. 464; and reflects that court's "unyielding . . . insistence that a defendant's waiver of his trial rights cannot be given effect unless it is knowing and intelligent."[5] (Internal quotation marks omitted.) *Illinois* v. *Rodriguez*, 497 U.S. 177, 183, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). Thus, such a waiver necessarily "involves the idea of assent, and assent is an act of understanding."[6] (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 449, 978 A.2d 1089 (2009).

Because the conduct of the parties " 'is of great importance' " in determining waiver; id.; we look to

1089 (2009); accord *State* v. *Fabricatore*, supra, 281 Conn. 482 n.18. There is no material distinction between these two characterizations of the waiver principle.

[5] The reason for requiring a knowing and intelligent waiver in such circumstances is obvious. As the United States Supreme Court has explained, this "strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the [c]onstitution were not provided. . . . The [c]onstitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the [f]ramers thought indispensable to a fair trial." (Citation omitted.) *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 241–42, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Of course, a constitutionally adequate jury instruction is a necessary prerequisite to a fair trial.

[6] I note that neither the state nor the majority has suggested that a less stringent standard of proof is applicable to the waiver issue presented by this appeal. In the absence of any such claim, I do not address the possible applicability of such a standard.

the record to discern whether the right was waived by counsel *with full knowledge of the existence of the right.* See id. In other words, "[a]n effective waiver presupposes full knowledge of the right or privilege allegedly [being] waived and some act done designedly or knowingly to relinquish it. . . . Moreover, the waiver must be accomplished with sufficient awareness of the relevant circumstances and likely consequences." (Internal quotation marks omitted.) *Perricone* v. *Perricone*, 292 Conn. 187, 207, 972 A.2d 666 (2009); accord *State* v. *Santiago*, 245 Conn. 301, 310–11, 715 A.2d 1 (1998). Furthermore, in determining whether this stringent standard has been met, "a court must inquire into the totality of the circumstances of each case." (Internal quotation marks omitted.) *State* v. *Woods*, supra, 297 Conn. 583; see also *State* v. *Foreman*, 288 Conn. 684, 697, 954 A.2d 135 (2008) (validity of purported waiver is question of fact that depends on circumstances of particular case). Because a fundamental constitutional right is at stake, "we will indulge every reasonable presumption against waiver . . . and . . . [will] not presume acquiescence in the loss of [such a right]. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Internal quotation marks omitted.) *State* v. *Woods*, supra, 583–84.

Thus, in the present case, counsel cannot be deemed to have waived the defendant's right to a constitutionally adequate jury charge in the absence of a record clearly demonstrating, *either* expressly *or* impliedly, counsel's knowledge that the charge, at least potentially, was constitutionally infirm and that counsel, in the exercise of his professional judgment, decided to forgo any claim concerning that possible infirmity. Of course, neither the state nor the majority claims that the record supports a finding of express waiver. Nevertheless, under our jurisprudence, counsel may be found

to have impliedly waived a claim that the court's jury instructions were constitutionally deficient. To establish such an implied waiver, however, the state bears the burden of meeting the same stringent standard that is applicable to express waivers, namely, that the waiver represents the intentional relinquishment of a known right. Consequently, waiver may be implied—that is, it may be inferred—only if the record reveals conduct by counsel demonstrating *both* that counsel had *knowledge* of the potential constitutional claim *and intentionally* decided not to raise it, presumably for strategic reasons. See, e.g., *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 251–52, 618 A.2d 506 (1992) ("Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . Assuming [the threshold applicability of the doctrine of] implied waiver [to the present case] . . . the plaintiff would still have to make a showing that the defendants knew of their right[s] . . . before they could [intentionally] waive [them]." [Citations omitted; internal quotation marks omitted.]).

These waiver principles apply to unpreserved constitutional claims for good reason. The narrow *Golding* exception to the general rule that a reviewing court will not consider a claim not previously raised at trial is justified by the overriding importance of protecting the fundamental constitutional rights of the accused. See *State* v. *Golding*, supra, 213 Conn. 238–39 (explaining "exceptional" circumstance presented by unpreserved claim of constitutional violation if record sufficient for review); see also *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973) (predecessor to *Golding* identified " 'exceptional circumstance' " that arises when "the record adequately supports a claim that a litigant has

clearly been deprived of a fundamental constitutional right and a fair trial"). In the present case, however, the majority fails to adhere to these principles with respect to a certain class or category of cases, that is, those cases in which defense counsel, following a charge conference at which counsel has been afforded timely notice of the charge, informs the court that he has no objection to the charge.[7]

The shortcoming of the majority opinion is attributable to the majority's determination of an implied waiver by conduct on the basis of a record that clearly does not support such an inference. According to the majority, when, as in the present case, defense counsel, having been given sufficient time to review the jury charge, expresses approval of the charge, it is reasonable to infer that counsel knowingly and intentionally waived any constitutional objection to the charge. In other words, in such circumstances, defense counsel will be *deemed* both to have known of the potential constitutional claim and to have decided not to raise it. The majority reaches this conclusion even though there is nothing in the record to indicate either that counsel was aware of the constitutional issue or that he intentionally opted to forgo any objection to the constitutionally defective instruction.

"An inference is [a] process of reasoning by which a fact or proposition sought to be established is deduced

[7] I hereinafter refer generally to defense counsel's failure to raise a constitutional challenge to the court's jury instructions. In fact, in any given case, counsel may have raised one or more such challenges. Of course, each of those challenges represents a preserved constitutional claim, and, therefore, the defendant need not invoke *Golding* for purposes of obtaining appellate review of those claims. My references to counsel's failure to raise a claim of instructional impropriety are to any and all such claims that defense counsel did not raise, irrespective of whether counsel raised one or more other claims of instructional error. Of course, the fact that counsel may have raised one or more such claims has no bearing on the extent to which the defendant may or may not be deemed to have waived all other such claims that defense counsel did not raise.

as a logical consequence from other facts, or a state of facts, already proved or admitted." (Internal quotation marks omitted.) *Walker* v. *Mortham*, 158 F.3d 1177, 1183 n.10 (11th Cir. 1998), cert. denied, 528 U.S. 809, 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999); see also *State* v. *Fermaint*, 91 Conn. App. 650, 665, 881 A.2d 539 (*Bishop, J.*, dissenting) ("[i]n plain terms, an inference is simply a deduction or conclusion based on proven facts"), cert. denied, 276 Conn. 922, 999 A.2d 90 (2005). Thus, "[a]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist]." (Internal quotation marks omitted.) *Siewe* v. *Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007). "An inference is reasonable if the conclusion flows from logical and probabilistic reasoning." (Internal quotation marks omitted.) *United States* v. *Truong*, 425 F.3d 1282, 1288 (2005).

It is apparent that the conduct of counsel in reviewing the charge and advising the court that he has no objection to it is insufficient to support the inference that counsel intentionally abandoned the defendant's right to raise a constitutional challenge to the charge. Counsel *might* have been aware of a potential constitutional infirmity in the charge and elected not to seek to remedy the impropriety, but there is no reasoned basis for concluding that counsel was, in fact, aware of the claim and decided to forgo it. In the absence of a discussion of the potential constitutional claim during the charge conference, or some other indication in the record that counsel was aware of the existence of such a claim, it simply is unreasonable to infer that counsel, with knowledge of the claim, intentionally abandoned it. Thus, far from "indulg[ing] every reasonable presumption against waiver of fundamental constitutional rights"; (internal quotation marks omitted) *State* v. *Woods*, supra, 297 Conn. 583–84; and otherwise adhering to the "strict standard" that this court demands for

purposes of demonstrating the waiver of a constitutional right; (internal quotation marks omitted) id., 583; the majority applies a test that, by any measure, falls well short of what is required to support a finding of implied waiver. Indeed, the majority provides no explanation as to why it is reasonable to infer that counsel intentionally has abandoned a constitutional claim, with full knowledge of that claim, merely because counsel agreed to the jury charge after having been afforded a reasonable opportunity to review it. In fact, in terms of probabilities, it is far more likely that counsel raised no constitutional objection to the charge because he was aware of no such objection.

The majority's reasoning cannot withstand scrutiny for another, albeit related, reason. Under that reasoning, we must presume that defense counsel was aware of and elected to waive *every constitutional claim that conceivably could have been raised* with respect to the court's instructions. This is so because the majority treats as waived *any and all* constitutional claims to which the defense had not objected after having had an adequate opportunity to review the charge. Thus, although it may appear, at first glance, that the majority's inference of a knowing and intentional waiver pertains only to the specific claim at issue on appeal, under the majority's reasoning, defense counsel necessarily is deemed to have waived every single constitutional claim that possibly could have been made with respect to the court's jury instructions. Of course, such an inference is unreasonable; no defense attorney or team of defense attorneys, no matter how capable or prescient, could possibly be expected to recognize each and every constitutional claim—meritorious and unmeritorious, innovative and not so creative—that conceivably might be raised to challenge the constitutionality of the court's jury charge. Nevertheless, that is precisely the inference

on which the majority relies in finding that defense counsel in the present case impliedly waived the defendant's constitutional claim.[8]

Furthermore, because the majority's inference of waiver is unsupported and, therefore, bears no reasonable relation to counsel's *actual* intent in failing to raise a claim, in future cases, counsel can readily avoid the inherent unfairness of the majority's decision. To do so, counsel who does not wish to have a reviewing court treat his failure to object as a waiver for *Golding* purposes may avoid such treatment simply by informing the trial court that he has not raised a constitutional challenge to the charge *because he is unaware of any such claim, and not because he has elected to waive the claim.* In view of the fact that the doctrine of implied waiver is employed for the purpose of ascertaining an actor's intent when that intent remains *unstated,* counsel's express statement disavowing waiver—reflecting counsel's *actual intent*—necessarily would trump any finding of implied waiver by this court or the Appellate Court under the approach that the majority adopts.[9]

---

[8] I note that the state claims, as an alternative to establishing waiver, that counsel may be deemed to have forfeited the defendant's right to raise a claim challenging the court's jury instructions on constitutional grounds when the court affords counsel a reasonable opportunity to review the charge and counsel indicates his acceptance of the charge. The majority rejects the state's contention, explaining that forfeiture, which is defined as "the failure to make the timely assertion of a right"; (internal quotation marks omitted); is not a bar to *Golding* review of an unpreserved claim of instructional impropriety. In fact, however, the majority effectively embraces the forfeiture doctrine while purporting to reject it. This is so because, as I have explained, counsel's conduct does not support an inference of waiver, and, consequently, the sole basis for barring the defendant's claim on appeal stems from counsel's failure to have timely asserted that claim at trial. Indeed, the fact that the majority's conclusion is predicated on forfeiture and not on waiver is demonstrated by the majority's reliance on policy considerations rather than the fact-intensive inquiry that is necessary to the determination of whether an implied waiver by conduct has occurred.

[9] The majority disputes the logic of this analysis, asserting that, "an admission by counsel that he is unaware of a constitutional claim can mean only one of two things, namely, that competent counsel . . . has intentionally

The fact that defense counsel can so easily overcome the inference on which the majority's decision is predicated demonstrates the inherent weakness in the majority's reasoning and completely defeats the import and purpose of the majority's holding.[10]

waived the right to raise a constitutional challenge on appeal or that counsel is ineffective because he fails to recognize the existence of a constitutional challenge." Footnote 25 of the majority opinion. This assertion is incorrect because the majority fails to recognize the vast majority of the claims that it deems waived by competent counsel's failure to raise the claim, namely, the infinitely large category of constitutional claims *that lack merit*. Just as the majority has no response to the fact that no competent counsel possibly could conceive of all such claims, the majority also has no response to the fact that, under its decision, counsel is irrebuttably presumed to have waived all constitutional claims that have not been raised, including claims that ultimately are determined to be without merit. Unfortunately, the majority fails to come to grips with this fundamental problem in its analysis.

Of course, in the rare case in which counsel actually intends to waive one or more claims relating to the court's jury instructions, counsel presumably would so advise the court. In doing so, counsel would be discharging his duty of candor to the court and, at the same time, avoiding an unwarranted inference of waiver, for *Golding* purposes, with respect to any other potential constitutional claims pertaining to the jury charge.

[10] The majority rejects this analysis, asserting, first, that there is "no legal support for a blanket preservation by trial counsel of all constitutional challenges to jury instructions merely on the basis of counsel's in-court statement that he or she is 'unaware' of a constitutional violation," second, that "such a ploy could open up a 'Pandora's box,' flooding Connecticut courts with cases alleging improper jury instructions on every conceivable issue," third, that it would make "a mockery of the trial court's attempt to query and solicit counsel's input on the jury instructions," and, fourth, that it "would conflict directly with the mandate of rule 1.1 of the Rules of Professional Conduct that requires adequate preparation by counsel in representing a client, which presumably would include sufficient familiarity with the jury instructions to identify instructions that are constitutionally flawed." Footnote 25 of the majority opinion. These objections are lacking in merit, primarily because they have *nothing at all to do with the fact-based inquiry* that, as the majority itself acknowledges, is determinative of whether a constitutional right has been knowingly and intentionally waived by implication. See part II B of the majority opinion (whether reviewing court may find that defense counsel waived constitutional claim by implication depends on "a close examination of the record and the particular facts and circumstances of each case," including, most importantly, counsel's "course of conduct"). Indeed, the majority's four reasons simply highlight the fundamental problem with its analysis; each of those reasons is predicated on *policy concerns* that, the majority claims, stem from counsel's express dis-

avowal of waiver and that have no bearing on the issue of whether, as a *factual* matter, it is reasonable to infer that counsel has knowingly and intentionally waived a constitutional claim or claims despite counsel's representation to the contrary.

Furthermore, even as a matter of policy, the four concerns expressed by the majority have no basis in fact or law. The majority's first point, namely, that there is "no legal support for a blanket preservation by trial counsel of all constitutional challenges to jury instructions merely on the basis of counsel's in-court statement that he or she is 'unaware' of a constitutional violation"; footnote 25 of the majority opinion; fails for at least two reasons. First, there is no controlling precedent to cite on the issue because the majority's approach is itself unprecedented; indeed, the majority cites nothing to support its opposing argument. Second, and more importantly, the majority misses the point in asserting that a statement by counsel informing the court that he or she is unaware of any potential constitutional claim constitutes a "blanket preservation . . . of all constitutional challenges" to *the court's jury instructions. Id.* In fact, such a statement by defense counsel does not serve to *preserve* any claim or claims; rather, the statement merely serves to ensure that, on appeal, the defendant will not be barred from bringing an *unpreserved* constitutional claim *that otherwise would be reviewable under Golding* merely because counsel was unaware of the claim and therefore failed to raise it at trial.

The majority's second concern also is completely unfounded. A forthright statement by counsel explaining why his or her failure to raise a constitutional challenge to the charge should not be construed as a waiver of any such challenge cannot, by any fair standard, be characterized as a "ploy . . . ." Id. In fact, the majority fails to provide any support for its dismissive and pejorative characterization of such a statement; rather, the majority simply asserts, without any basis for doing so, that the statement, although accurate, is merely a gambit or maneuver. More importantly, there is absolutely no reason to believe that a proper application of the waiver principle will lead to a flood of claims on appeal in which appellate counsel raises "every conceivable [jury instruction] issue . . . ." Id. Simply put, the majority's concern is both unsupported and unsupportable. The majority's concern is unsupported because the majority provides no evidence, anecdotal or otherwise, to substantiate its bald assertion that accepting defense counsel's representations on the issue of waiver would result in a flood of claims on appeal. The majority's concern is unsupportable because there is no reason to presume—again, the majority itself advances no such reason—that appellate counsel will flood this court and the Appellate Court with frivolous claims of constitutionally deficient jury instructions.

The majority also asserts that a statement by counsel disavowing a knowing and intentional waiver of potential constitutional claims would make "a mockery of the trial court's attempt to query and solicit counsel's input on the jury instructions" and "would conflict directly with the mandate of rule 1.1 of the Rules of Professional Conduct that requires adequate preparation by counsel in representing a client, which presumably would include sufficient familiarity with the jury instructions to identify instructions that are constitutionally flawed." Id. This assertion is devoid of merit, as well.

It is clear that the majority's approach constitutes a marked departure from our waiver jurisprudence generally and from our *Golding* jurisprudence specifically.[11]

Contrary to the view of the majority, it must be presumed that defense counsel seek to represent their clients conscientiously and effectively and, further, that counsel will comply with their professional obligation to attend to matters concerning the court's jury instructions with diligence and due care. Moreover, there is no basis for the majority's suggestion that an attorney who fails to identify a constitutionally flawed jury instruction would be violating rule 1.1 of the Rules of Professional Conduct; although it may be that, in some cases, such an oversight would support a claim of ineffective assistance of counsel, there is no legal or factual support for the majority's assertion that the oversight also implicates *ethical* concerns. Finally, the majority demonstrates its misunderstanding of the issue presented when it asserts that adequate preparation by counsel "presumably would include sufficient familiarity with the jury instructions to identify instructions that are *constitutionally flawed.*" (Emphasis added.) Id. In fact, under the approach that the majority adopts, defense counsel will be deemed to have waived both meritorious *and unmeritorious* claims challenging the constitutional adequacy of the jury instructions. Since counsel cannot possibly be expected to anticipate all potential unmeritorious claims that may be raised on appeal, no matter how well prepared counsel might be, there is absolutely no reason to think that rule 1.1 of the Rules of Professional Conduct somehow will be undermined by counsel's explanation disavowing waiver.

In sum, it is clear that the majority disapproves of the consequences that it perceives will flow from counsel's disavowal of a knowing and intentional waiver of any instructional impropriety. Putting aside the fact that the majority's concerns are unfounded, I submit that those concerns do not stem from any logical flaw in my assertion that, under the fact-driven law of waiver, counsel can avoid a finding of implied waiver by expressly disavowing an intent to waive any claim of instructional error. Rather, the majority's concerns flow from considerations wholly unrelated to principles of waiver, namely, policy considerations that the majority believes militate in favor of denying *Golding* review in cases such as the present one. As I have explained, however; see footnote 8 of this concurring opinion; the majority seeks to give voice to those policy considerations through a misapplication of the waiver doctrine; in reality, the majority's decision rests on the forfeiture doctrine, pursuant to which defense counsel's failure to make a claim in a timely manner, that is, at trial, bars the defendant from raising the claim on appeal. Simply put, it is self-evident that a defense attorney who, in his capacity as an officer of the court, represents to the court that he is aware of no constitutional infirmity in the jury charge, cannot possibly be deemed to have knowingly and intentionally waived any and all future claims challenging the constitutionality of that charge.

[11] I note that the majority's decision cannot be squared with the approach that this court has taken with respect to unpreserved claims of prosecutorial impropriety during closing argument. Specifically, we have stated that a

In fact, the majority's analysis does not truly implicate waiver at all, for it is unreasonable to infer that counsel knowingly and intentionally waived any and all constitutional claims that might have been raised with respect to the jury charge solely on the basis of the fact that counsel reviewed the charge in advance and raised no objection to it. Rather, the majority decides to deny *Golding* review in the present case primarily on the basis of policy considerations that have nothing to do with traditional waiver principles. The considerations that the majority identifies are: "[1] our rules of practice, which provide for substantial participation by counsel in formulating and reviewing jury instructions, [2] basic principles of fundamental fairness that favor placing responsibility with the trial court and the parties' counsel to take all necessary measures at the time of trial to ensure that the instructions are correct, and [3] the availability of habeas review to determine whether counsel's failure to take exception, or to suggest any changes, to the jury instructions constituted ineffective assistance and caused prejudice, thus requiring a new trial."

defendant is entitled to appellate review of an alleged due process violation stemming from improper prosecutorial argument even though defense counsel sat through that argument and raised no objection. See, e.g., *State* v. *Stevenson*, 269 Conn. 563, 575–77, 849 A.2d 626 (2004). If ever there was a case in which defense counsel might be presumed to have waived a constitutional claim, that is it; indeed, we expressly have recognized the role that tactical considerations are likely to have played in such a scenario. See id., 576 ("defense counsel may elect not to object to arguments that he or she deems marginally objectionable for tactical reasons, namely, because he or she does not want to draw the jury's attention to it or because he or she wants to later refute that argument" [internal quotation marks omitted]). This court having opted not to bar appellate review of such unpreserved claims, there is far less reason to bar appellate review of claims such as those raised in the present case, claims that, in stark contrast to claims concerning a prosecutor's allegedly inflammatory closing argument, frequently implicate complex and subtle issues embedded in a lengthy jury charge.

In fact, none of these policy considerations has the slightest bearing on the issue of whether counsel knowingly and intelligently waived the defendant's right to a constitutionally adequate jury instruction. The fact that our rules of practice provide generally for participation by defense counsel in formulating and reviewing jury instructions provides no insight into whether counsel's participation in a particular case warrants the conclusion that a failure to object to a particular charge reflects counsel's intentional waiver of a known right. Of course, policy considerations that purportedly favor placing responsibility with the trial court and the parties' counsel to ensure that the jury charge is correct shed absolutely no light on whether counsel's failure to object was the product of a tactical decision or negligence. Moreover, the availability of a habeas remedy also has nothing to do with the fact-based waiver inquiry. Indeed, the real basis for the majority's conclusion appears to be its view that it is wise *policy* to deprive a defendant of *Golding* review in cases such as the present one, and not because an inference of waiver may fairly be drawn from the record.[12]

---

[12] Although the majority does not say so, the result it achieves seems to be responsive generally to the concerns expressed by the Appellate Court in *State* v. *Reynolds*, 118 Conn. App. 278, 305–306 n.7, 983 A.2d 874 (2009), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010), with respect to our waiver analysis in *State* v. *Ebron*, 292 Conn. 656, 679–82, 975 A.2d 17 (2009). Characterizing *Ebron* as "narrowly defining waiver"; *State* v. *Reynolds*, supra, 305 n.7; and relying on policy concerns relating to the import and efficacy of charge conferences, the court in *Reynolds* encouraged this court to reconsider its holding in *Ebron* with respect to the availability of *Golding* review notwithstanding defense counsel's acquiescence in a jury charge following a charge conference and an adequate opportunity to review and consider that charge. See id., 305–306 n.7 ("Mindful of the purpose of a charge conference, we are concerned that *Ebron* could have the effect of rendering the charge conference an inconclusive and less than meaningful exercise during which there may be decreased incentive for counsel to clearly articulate a proposed charge in a difficult area when counsel may determine [that] it is more advantageous to leave the door ajar for another day. Such a tactic could place an arduous, unnecessary burden on the trial court in its effort to compose a fair, accurate and legally appropriate jury charge and could result in unnecessary relitigation of criminal matters.

Indeed, it appears that, under the majority's holding, the remedy of a writ of habeas corpus predicated on a claim of ineffective assistance of counsel would not be available in certain cases when, as in the present case, counsel is deemed to have waived a constitutional claim. It is well established that, "to perform effectively, counsel need not recognize and raise every conceivable constitutional claim." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). "Moreover, numerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance." Id., 461. "Nor is counsel required to change then-existing law to provide effective representation." (Internal quotation marks omitted.) Id., 462. Thus, a defendant whose attorney failed to raise a new or novel claim at trial—and who, under the majority's decision, is deemed to have waived that claim for *Golding* purposes and thus is barred from seeking review of that claim on appeal—also will be unable to obtain habeas relief because there is no basis

Although we follow *Ebron, as we must,* and afford review to the defendant's claim under the particular circumstances we face, we express our concerns regarding the practical implications of its holding for the trial bench with the hope that, perhaps, this issue of waiver by acquiescence or concurrence has not seen its last day." [Emphasis in original.]). In expressly overruling *Ebron,* the majority relies on similar policy considerations pertaining to the use and value of charge conferences. As I have explained, these considerations cannot properly be used to decide the waiver issue presented by this case because *they have nothing to do with waiver.* In any event, even if it were appropriate to eschew a waiver analysis in favor of a policy analysis, I agree with Justice Katz that, for the reasons set forth in her concurrence, the benefits of *Golding* review substantially outweigh the policy considerations that the majority has identified. Indeed, because the waiver doctrine is such an important part of our jurisprudence, it is difficult to see how *any* policy consideration or set of considerations could trump the requirement that, to be effective, the waiver of a constitutional right must be knowing and intelligent.

for an ineffective assistance claim. Consequently, to the extent that the majority's decision is predicated on the availability of a habeas remedy, that reliance is misplaced because, in some cases, the defendant will have no opportunity to obtain such a remedy.[13]

Moreover, for any case in which counsel's failure to object to a constitutionally deficient jury instruction gives rise to a claim of ineffective assistance of counsel and that claim is meritorious, the defendant will be required to await the successful outcome of his habeas claim before obtaining the new trial to which he is entitled. Furthermore, the new trial will be further delayed by any appeal that the commissioner of correction elects to take from the adverse judgment of the habeas court. This delay is both unnecessary and unfortunate, especially for those defendants serving a sentence of incarceration. In addition, the majority's decision will make it more difficult to prevail on unpreserved claims of instructional impropriety. Before today's decision, a defendant who had established that his trial was tainted by a constitutionally defective jury charge would be entitled to a new trial unless, under the fourth prong of *Golding*; see footnote 1 of this concurring opinion; the state established that the improper charge was harmless beyond a reasonable doubt. Hereafter, that same defendant bears the burden of establishing not only that his attorney's representation fell below the range of competence displayed by attorneys with ordinary skill and training in the criminal law, but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[13] Apparently, the majority has carved out an exception for *Golding* claims alleging the existence of an entirely new constitutional right. Of course, such cases are extremely rare and comprise only a small subset of cases in which defense counsel will not be deemed to have waived a constitutional challenge to the court's jury instructions. In all other cases, the defendant runs the risk that this court will deem his claim to have been waived and that the habeas court will reject the defendant's claim of ineffective assistance of counsel.

of the proceeding would have been different." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009). For the reasons previously set forth in this opinion, and in the absence of evidence that counsel's decision to forgo an objection to the defective charge was tactical, there is no justification for placing this burden on a defendant.

The fact that the majority opinion is driven by the various policy considerations identified by the majority and not by principles of waiver is reflected in the majority's insistence that, in accordance with well established rules pertaining to waiver, the determination of whether counsel has waived the defendant's right to a constitutionally adequate jury charge "must be based on a close examination of the record and the particular facts and circumstances of each case." Of course, this is the rule applicable to proving waiver generally; see, e.g., *State* v. *Woods*, supra, 297 Conn. 583; and so the majority asserts that it also is applicable in the present case. In reality, under the approach that the majority adopts, the reviewing court's "close examination of the record" and careful consideration of "the particular facts and circumstances of the case" require nothing more than a determination of whether counsel, having been afforded a reasonable, advance opportunity to review and comment on the court's charge, raised no objection to the charge. If so, the reviewing court is bound to treat *any* constitutional challenge to *any* aspect of the jury instructions as having been waived by counsel.[14]

---

[14] In fact, contrary to the majority's conclusion, principles of fundamental fairness and judicial economy militate strongly against the majority's approach. There are two possibilities when a defendant raises a claim of instructional impropriety under *Golding*: either the claim will entitle the defendant to a new trial or it will not. The significant majority of cases are likely to fall into the second category, either because the defendant cannot establish the alleged constitutional violation or because any such violation was harmless. With respect to that category of cases, the interests of justice clearly are served if the appellate tribunal entertains and rejects the claim

The majority also insists that it is not adopting a "less stringent standard" for purposes of determining whether counsel has knowingly and intelligently waived a defendant's right to challenge a constitutionally deficient jury charge. Contrary to the majority's assertion, that is exactly what the majority is doing. Although purporting to apply the requirement of a knowing and intelligent waiver, the majority then concludes that it reasonably may be inferred that counsel intended such a waiver even though there is nothing in the record even to suggest that counsel was aware of the right at issue, which, so far as the record will reflect, is buried somewhere in the court's lengthy set of jury instructions. For that reason, the majority employs a standard that is much less demanding than the standard required under our well established waiver jurisprudence.[15]

in accordance with *Golding* rather than avoiding the claim by treating it as having been waived by implication; in that event, both the defendant and the state know at the earliest possible time that the claim does not entitle the defendant to a new trial, and, moreover, there will be no basis for raising the issue in a petition for a writ of habeas corpus.

The second category of cases, which contains only a very small minority of cases involving *Golding* claims alleging an instructional impropriety of constitutional magnitude, includes only those cases in which the defendant can establish entitlement to a new trial because of a constitutional violation that was not harmless. As I have explained, in the rare case in which the defendant can prevail on such a claim under *Golding*, it is unfair to deprive the defendant of a new trial pending the filing and final resolution of a habeas petition. To conclude otherwise, as the majority does, accomplishes nothing and denies the defendant of the opportunity for a retrial in a timely manner.

[15] The majority asserts that, "[a]lthough it might be the better practice for the trial court to read the proposed instructions line by line and ask after each instruction whether defense counsel agrees, we fail to see a meaningful distinction between repeatedly asking counsel if he or she has any issues with the proposed charge and requesting comments from counsel after the court reads each section of the charge." Again, the majority misses the point. For purposes of ascertaining whether counsel's conduct constituted a waiver, it makes no difference whether the court takes counsel through the charge line by line or merely asks counsel if he or she has any objection to the charge; in neither case does the record support an inference of waiver. As I previously explained, waiver cannot be found from a record that does not demonstrate counsel's actual awareness of the existence of a potential

I therefore would conclude that the waiver doctrine does not preclude the defendant from *Golding* review of his unpreserved claim of instructional impropriety. For the reasons set forth by Justice Katz in her concurrence, however, I also would conclude that the defendant cannot prevail on the merits of that claim. Accordingly, I concur in the result.

claim or claims. When, as in the present case, the record is silent on that issue, it is impossible to tell whether counsel was aware of the claim and intentionally abandoned it, or whether counsel simply did not read the charge as containing any such claim.

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.